MARVIN A. HOLT v. SANFORD M. SWENSON.

90 N. W. (2d) 724.

June 6, 1958—No. 37,445.

*Mary P. Walbran,* for appellant.
*Marvin A. Holt,* pro se, for respondent.

MATSON, JUSTICE.

Appeal from a judgment for plaintiff in an action to foreclose an attorney's lien.

The sole issue is whether the evidence sustains the trial court's findings: (1) That defendant agreed to pay plaintiff a sum equal to one-third to one-half of the amount recovered for him, and (2) that $3,000 is a reasonable fee for plaintiff's services.

This dispute as to attorney's fees grew out of defendant's desire to file a claim against the guardian of his father's estate for 7 years of service in caring for the father beginning with the year 1945, and also to take legal action to set aside a transfer of $27,400 of stock which the father in 1952 had made to a granddaughter and to the defendant's brothers. Defendant's father, who had been under guardianship since 1953, died at the age of 92 in July 1956.

Taking the evidence in the light most favorable to the findings, we have these facts. Plaintiff, who has been in the active practice of law in Minneapolis since 1944, was first consulted by defendant in regard to the above matters in January or February of 1956. Defendant had previously consulted other attorneys about his claims and they had advised him that his claim for services rendered to his father might be greatly diminished by the statute of limitations. Similarly, plaintiff advised defendant of the statute of limitations problem at the outset

of their consultations. He further advised defendant that his claim of fraud and undue influence in the transfers of stock by defendant's father would be difficult to prove. Nevertheless, defendant was insistent about his claims and plaintiff decided to proceed with the matter.

In April 1956, plaintiff briefly outlined the terms of defendant's claims in a letter to the guardian of defendant's father. Defendant conferred with plaintiff frequently and plaintiff continued to work on the matter, researching problems presented by the claims. In June 1956, plaintiff instituted an action to have a special guardian appointed for the purpose of commencing suits to set aside the stock transfers. After the death of defendant's father in July 1956, plaintiff began an action for the appointment of a special administrator for the same purpose, and subsequently was appointed special administrator. In July 1956, plaintiff filed a claim for $16,000 in probate court against the estate of defendant's father on defendant's behalf.

In the fall of that year, plaintiff, seeking a specific agreement as to his compensation, asked defendant for a $1,000 retainer fee to continue defendant's case. Defendant indicated that he was financially unable to pay $1,000 but suggested that plaintiff accept, in lieu thereof, defendant's summer home in Danbury, Wisconsin, in which defendant had invested about $3,000. Plaintiff declined defendant's offer on the ground that he had no use for a summer home. Defendant then suggested that plaintiff seek his compensation from the estate of defendant's father. Plaintiff informed defendant that he could receive no compensation for legal services from the estate unless plaintiff was successful in recovering something *for the estate* in the suits to set aside the transfers of stock which was highly problematical. Plaintiff further declared that, in view of defendant's inability to pay and the nature of defendant's claims, he would have to proceed with the case on a contingent fee basis of one-third to one-half of everything he recovered for defendant, the exact amount of the fee to be dependent upon the amount he recovered for the defendant. Defendant stated that it would have to be that way because he was financially unable to give plaintiff any funds.

At defendant's insistence and with his encouragement, plaintiff continued to press defendant's claims. Since a favorable result in the pro-

posed litigation regarding the stock transfers was dubious, plaintiff began negotiations with the other heirs of defendant's father for settlement of defendant's claims. He telephoned and corresponded frequently with the parties involved and their counsel. Although the heirs were adverse to a settlement with defendant, plaintiff, because of the prospect of prolonged and expensive litigation in settling the estate, prevailed upon them to reach an agreement.

After several meetings with the heirs, plaintiff, in January 1957, succeeded in arranging a settlement. Under its terms defendant was to receive from the other heirs quitclaim deeds to a Minneapolis house in which he had been living. The house had an appraised value of $9,000 and the other heirs had an equity therein of $6,750, representing their combined distributive shares. In addition, defendant was to receive $3,000 in cash subject to the further provision that he was not to be precluded from receiving his distributive share of the $2,000 or $3,000 which remained in the father's estate. In return, defendant was required to relinquish his claim for services rendered to his father and forever abandon his proposed suits to set aside the stock transfers. Defendant indicated positively that this agreement was satisfactory to him.

When plaintiff received the proceeds of the settlement and informed defendant of the receipt thereof, defendant came to plaintiff's office, told plaintiff that he was in difficult financial circumstances, and requested that plaintiff "go easy" on him. Plaintiff offered to take a $3,000 check made out to plaintiff and defendant jointly in full satisfaction of his fee, but defendant refused the offer. Plaintiff attempted for several weeks to procure his compensation from defendant but was unable to, whereupon he commenced proceedings to foreclose his attorney's lien on the quitclaim deeds and check he had retained in his possession.

In the lien foreclosure proceedings, the trial court found as fact that defendant and plaintiff entered into an agreement whereby defendant promised to pay plaintiff the sum of one-third to one-half of whatever plaintiff recovered in the matter of defendant's claims; that plaintiff collected $9,000 in connection with these claims; that between February 1956 and February 1957, plaintiff rendered legal services for defendant, the reasonable value of which was $3,000; that in connection

with defendant's claims, plaintiff disbursed $36.62; and that at no time did plaintiff promise to perform legal services for the defendant for the sum of $1,000. Pursuant to these findings, judgment was entered for the plaintiff in the sum of $3,036.62. Defendant appeals from that judgment.

Upon this appeal from the judgment, since no motion was made for a new trial, we are concerned only with the issues of whether the evidence sustains the trial court's findings and whether those findings support the conclusions of law and the judgment.[1]

Defendant contends that the evidence does not sustain the finding that there was a contract between him and the plaintiff for a contingent fee or the other finding that plaintiff's services were reasonably worth $3,000. He further alleges that plaintiff had agreed to furnish the legal services for $1,000.

■■■ In passing on the sufficiency of the evidence, it is to be borne in mind that a party has an unrestricted right to contract with his attorney as to compensation for services and the measure and mode thereof,[2] and that the contract may be either express or implied.[3] Furthermore, an express fee contract may be oral or written.[4] It is of no significance that a contract provides for a contingent fee since contingent fee contracts are valid—unless they are in contravention of public policy—and they are to be condemned only where an attorney has taken advantage of a client's circumstances to exact an unreasonable or unconscionable proportion of the client's claim.[5] We are, of course, not concerned here with any contention that an unconscionable contingent fee is involved, but simply with the basic question of whether the parties by their words and conduct created a contract for a contingent fee.

■ The essentials of an express fee contract for legal services are

---

[1] Olson v. Mullen, 244 Minn. 31, 68 N. W. (2d) 640; 1 Dunnell, Dig. (3 ed.) § 392.

[2] M. S. A. 549.01; Eriksson v. Boyum, 150 Minn. 192, 184 N. W. 961.

[3] Wood, Fee Contracts of Lawyers, § 8; 7 C. J. S., Attorney and Client, § 175; 5 Am. Jur., Attorneys at Law, § 29.

[4] Wood, Fee Contracts of Lawyers, § 9.

[5] Hollister v. Ulvi, 199 Minn. 269, 271 N. W. 493.

the same as for any other contract of employment[6] and are governed by the ordinary rules of contract law. An offer must be sufficiently definite to form the basis of a contract. If an offer is so indefinite as to make it impossible for a court to decide what it means and to fix exactly the legal liabilities of the parties, its acceptance cannot result in an enforceable contract.[7]

While the testimony discloses that plaintiff's offer established with certainty that he was to receive a minimum fee of one-third of any amount recovered, it did not make clear under what circumstances the fee would be increased to one-half of the recovery. The offer's indefiniteness in terms as to when the fee might be increased to one-half was not fatal to a finding that it provided a basis for an express contract to pay a minimum fee of one-third of the recovery. Courts are reluctant to invoke the principle that indefiniteness prevents the creation of a contract where a just result, consistent with a reasonably expressed intent of the parties, can be reached by upholding the agreement.[8] A reasonable inference is that an acceptance of plaintiff's offer would carry with it a mutual intent or understanding that the parties should leave to future determination whether the amount of recovery would justify a fee in excess of the minimum one-third. Within the contract's minimum and maximum fee limitations, there was therefore a question of fact as to the reasonableness of the fee which, in case of dispute, was properly determinable by the trier of fact in the light of all the surrounding facts and circumstances.

■ The conflicting evidence, taken in the light most favorable to the plaintiff, sustains the trial court's finding that defendant had accepted plaintiff's offer. Aside from testimony that defendant verbally accepted plaintiff's offer, his conduct alone supports a finding of his acceptance. Even if we assume that defendant remained silent at the time of the offer and subsequent thereto, he must be deemed to have accepted the

[6]Wood, Fee Contracts of Lawyers, § 9; 7 C. J. S., Attorney and Client, § 181.

[7]Young v. St. Paul Publishers, Inc. 210 Minn. 346, 298 N. W. 251; 4 Dunnell, Dig. (3 ed.) § 1744; 17 C. J. S., Contracts, § 36.

[8]Hartung v. Billmeier, 243 Minn. 148, 66 N. W. (2d) 784.

offer since he encouraged the defendant to continue the pursuit of his claims, knowing of plaintiff's offer made under circumstances under which plaintiff was justified in expecting a reply. It is well settled that acceptance of an offer may be by conduct, and where the relation between the parties is such that the offeror is justified in expecting a reply, or where the offeree is under a duty to reply, the latter's silence will be regarded as an acceptance.[9] The requisite mutual assent for the formation of a contract—frequently expressed by the inaccurate and misleading phrase "meeting of the minds"—does not require a subjective mutual intent to agree on the same thing in the same sense, but may be based on objective manifestations whereby one party by his words or by his conduct, or by both, leads the other party reasonably to assume that he assents to and accepts the terms of the other's offer.[10] In other words, the manifestation of mutual assent may be made wholly or partly by written or spoken words or by other acts or conduct.[11]

In the light of these principles the trial court, upon the conflicting testimony, was justified in finding that defendant had assented to the terms of plaintiff's offer to perform the legal services on a contingent fee basis.

We have not overlooked the fact that defendant testified that plaintiff expressly agreed to perform all legal services with respect to his claims for a $1,000 fee. This was denied by the plaintiff. The credibility of witnesses testifying in relation to this issue was for the trier of fact.[12] We cannot say, in the light of the evidence as a whole, that the trial court erred in rejecting plaintiff's testimony. The evidence also sustains the trial court's finding that the plaintiff recovered $9,000 for the defendant.

---

[9] 4 Dunnell, Dig. (3 ed.) § 1740, pp. 50 to 52.

[10] See, Everson v. De Schepper, 157 Minn. 257, 195 N. W. 927; Peet v. Roth Hotel Co. 191 Minn. 151, 253 N. W. 546; 4 Dunnell, Dig. (3 ed.) § 1742.

[11] Restatement, Contracts, § 21.

[12] See, for example, Werner v. Miller, 248 Minn. 75, 78 N. W. (2d) 63; In re Estate of Palmer, 238 Minn. 549, 57 N. W. (2d) 409; Carpenter v. Birkholm, 242 Minn. 379, 65 N. W. (2d) 250.

■ Did the trial court err as to the reasonable value of plaintiff's services? The reasonable value of legal services is to be determined from a consideration of the fee commonly paid members of the legal profession for the services and the circumstances under which the services were rendered.[13] In determining the reasonableness of attorney's fees, the character, ability, and experience of the attorney; the amount involved; the time necessary to prepare for trial; the responsibility assumed by counsel; the difficulties of the propositions involved; the results obtained; and the amount customarily charged for service of like character are all to be considered.[14] Plaintiff produced an expert witness who testified that the value of plaintiff's services was in excess of $3,000. It is undisputed that the time spent by plaintiff in connection with defendant's claims (in conferences with defendant, negotiations, legal research, and drafting of pleadings) amounted to at least 130 hours. It is undisputed that plaintiff made five court appearances on defendant's behalf in addition to the 130 hours, made 157 telephone calls (the time for 50 percent of which was not included in the 130 hours), and had 39 conferences with attorneys involved, heirs, witnesses, and the defendant. It is further uncontradicted that plaintiff disbursed $36.62 in pursuit of defendant's claims. In the light of the rule stated above and under these circumstances and others fairly tending to show that plaintiff actively, interestedly, and diligently pursued defendant's claims, in face of legal problems of no small difficulty, we would be unwarranted in concluding that the trial court erred in its finding that the reasonable value of plaintiff's services was $3,000.

The judgment of the trial court is affirmed.[15]

Affirmed.

Mr. Justice Frank T. Gallagher took no part in the consideration or decision of this case.

---

[13]Wood, Fee Contracts of Lawyers, § 28.

[14]In re Living Trust Created by Atwood, 227 Minn. 495, 35 N. W. (2d) 736, 9 A. L. R. (2d) 1126.

[15]The attention of counsel is called to Supreme Court Rule X (222 Minn. xxxv).