## KITTLER & HEDELSON AND ANOTHER v. SHEEHAN PROPERTIES, INC. AND OTHERS.

203 N. W. 2d 835.

January 19, 1973—No. 43446.

*O'Connor, Green, Thomas, Walters & Kelly, Joe A. Walters,* and *Frank J. Walz,* for appellants.

*Hvass, Weisman & King, Robert J. King, Meagher, Geer, Markham & Anderson,* and *O. C. Adamson II,* for respondents.

Heard before Knutson, C. J., and Otis, Kelly, and Schultz, JJ.

HAROLD W. SCHULTZ, JUSTICE.*

This is an appeal from an order denying defendants' motions for a new trial. The principal issue presented in this case concerns the propriety of attorney fee arrangements. The action was brought by plaintiffs, a law partnership, and by J. Patrick Kittler, individually, to recover attorneys' fees, expenses, and interest for services rendered from April 5, 1966, to April 30, 1968. The action was brought against defendants James L. Sheehan and John D. Sheehan and four corporations wholly or partially owned by them, namely, Sheehan Properties, Inc., Dugger-Holmes, Inc., Gale Institute, Inc., and Brooklyn Center Industrial Park, Inc. (hereinafter referred to as Industrial Park). The Sheehans counterclaimed to recover prior payments. Gale Institute and Industrial Park counterclaimed for abuse of process. The case was tried before a jury and at the close of the evidence, after 3 weeks of trial, the court granted plaintiffs' motion to dismiss the Sheehans' counterclaim but denied their motion to dismiss the counterclaim of Gale Institute and Industrial Park. The motions of defendants Gale Institute and Industrial Park to dismiss the complaints against them were granted. The partnership's claim was submitted to the jury on the theories of express contract, account stated, and quantum meruit. Kittler's individual claim was submitted on the theories of express contract and quantum meruit. A special verdict was returned in the amounts requested

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

against all four remaining defendants. The jury apparently found express contract or account stated since interest was awarded. The jury found against Gale Institute and Industrial Park on their counterclaims for abuse of process.

J. Patrick Kittler is a Minnesota attorney limiting his practice to matters of international law. He practiced in partnership with Raymond V. Hedelson until November 1967 and thereafter as an individual practitioner. Defendants James L. Sheehan and John D. Sheehan are Minneapolis businessmen with extensive business interests and considerable experience in employing services of lawyers. On April 5, 1966, Kittler was contacted to represent Sheehan Properties concerning the legal advisability of acquiring a Panama corporation owning a 2-million-acre ranch in Paraguay, South America. This developed into a relationship of attorney and client that continued until May 10, 1968. The work required many months of travel by Kittler or one of his associates to Europe, South America, and cities within the United States. It involved research, the examination of documents, the preparation of bonds and associated details, and the rendering of opinions and advice. The matters concerned complex financing arrangements and the discussion of them with many people in the United States and abroad.

The first billing for services by the plaintiff was on a time and expense basis and was paid out of defendants' account by their bank. Discussions were held between the parties concerning the hourly rates, daily rates for being absent from the office, and necessary expenses. Subsequent conversations and letters between the parties reiterated the rates charged and included an arrangement giving plaintiffs a 25-percent interest in the ranch for forbearance in demanding immediate payment for services and expenses. Payments were periodically made on account and monthly statements were submitted to defendants, which defendants admitted they received and never objected to or questioned. Finally, defendants admitted that prior to this action they had

never orally or in writing expressed to plaintiff Kittler that his work was unsatisfactory.

Defendants first contend that it was error to submit the issue of express contract to the jury because the fees were allegedly so excessive and overreaching that the court, as a matter of law, should have limited recovery to the reasonable value of the services. The right to enter into fee arrangements with an attorney is protected by Minn. St. 549.01, which provides:

"A party shall have an unrestricted right to agree with his attorney as to his compensation for services, and the measure and mode thereof * * *."

The essentials of such contracts, whether oral or written, express or implied, are the same as any other contracts. Holt v. Swenson, 252 Minn. 510, 90 N. W. 2d 724 (1958). When a fee agreement is fairly entered into with the client and involves no fraud by the attorney, it is as valid and binding as other contracts not involving a fiduciary. Eriksson v. Boyum, 150 Minn. 192, 184 N. W. 961 (1921). Even if the amount of compensation is altered after commencement of the employment, that fact by itself will not invalidate the contract. Anker v. Chicago Great Western R. Co. 144 Minn. 216, 174 N. W. 841 (1919).

However, this court has also observed that, while the freedom to contract between attorney and client is unimpaired, agreements made after services have been rendered should be closely scrutinized to see that there has been no overreaching and that the client was fully informed. Meagher v. Kavli, 251 Minn. 477, 88 N. W. 2d 871 (1958); Beals v. Wagener, 47 Minn. 489, 50 N. W. 535 (1891). Defendants urge upon this court the higher standard that an attorney must first prove the contract was fair and reasonable, citing Cooper v. Conklin, 197 App. Div. 205, 189 N. Y. S. 552 (1921). Plaintiffs correctly point out that subsequent New York decisions have held that the contract will be presumed fair until the contrary appears; it is a matter of proof. See, e. g., Rodkinson v. Haecker, 248 N. Y. 480, 162 N. E. 493

(1928). Defendants show no compelling reason to alter Minnesota's present standard of careful scrutiny of such contracts. The instructions in the present case cautioned that the contract should be scrutinized for overreaching. The evidence shows many instances of fee discussion, acceptances of services, and requests for additional services. The Sheehan brothers were experienced businessmen, knowledgeable about attorney-client relationships. This court has previously recognized such experience as a factor indicating less susceptibility to overreaching. Farmer v. Stillwater Water Co. 108 Minn. 41, 121 N. W. 418 (1909). With this in mind, it cannot be said as a matter of law that there was overreaching in the execution of the express contract.

Similarly, it cannot be said as a matter of law that the fees were so excessive as to preclude recovery on the contract. While some fees may come within this category, the present case is not of this nature. Provisions of the Canons of Professional Ethics,[1] Canons 12 and 13, and the Code of Professional Responsibility,[2] DR 2-106 and EC 2-18, establish criteria for judging the reasonableness of fees. Code of Professional Responsibility, DR 2-106(B) reads in part:

"A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee."

This court has on many occasions echoed and supplemented the Code in enumerating the factors to be considered in ascertaining whether a fee is reasonable. We have recently noted that a large fee is not necessarily an unreasonable fee. Obraske v. Woody, 294 Minn. 105, 199 N. W. 2d 429 (1972). Other factors we have considered include: (1) The time and labor required; (2) the responsibility assumed; (3) the magnitude of the principal amount; (4) the results obtained; (5) the fees customarily charged for similar services; (6) the experience, character,

---

[1] Adopted May 2, 1955 (241 Minn. xvii).

[2] Adopted August 4, 1970 (286 Minn. ix).

reputation, and ability of counsel; (7) the fee arrangements; (8) the circumstances under which the services were rendered; (9) the nature and difficulty of the proposition involved; (10) the doubtful solvency of the client and the apparent difficulties of collection; (11) the anticipation of future services; and (12) the preclusion of other employment. O'Donnell v. McGee Trucks, Inc. 294 Minn. 110, 199 N. W. 2d 432 (1972); State, by Head, v. Paulson, 290 Minn. 371, 188 N. W. 2d 424 (1971); In re Living Trust Created by Atwood, 227 Minn. 495, 35 N. W. 2d 736 (1949).

In light of these considerations, the fees were not excessive as a matter of law. The evidence establishes Kittler's reputation in his specialization of international law. The services required long and frequent absences from his office in international travel. The matters involved large amounts of money. Involvement in a renegotiation of the proposed purchase of the 2-million-acre ranch as well as an option on an additional 200,000 acres at $2 per acre, a proposed bond issue in excess of $5,000,000, and the very nature of the transactions required the assumption of great responsibility. These and other factors establish that the theory of express contract was properly submitted to the jury.

The defendants next argue that the jury should not have considered the amount of the fees under the theory of account stated. They urge that the magnitude of the account distinguishes this case from previous decisions and that there was no mutual accounting or agreement as to the accuracy of the statements.

It is well settled that an account can be stated between an attorney and client although, as with express contracts, such agreements will be scrutinized for overreaching. Beals v. Wagener, *supra*. Meagher v. Kavli, 251 Minn. 477, 487, 88 N. W. 2d 871, 879 (1958), set forth the elements of establishing an account stated as follows:

"* * * An account stated comes into being through an acknowlegment or an acquiescence in the existing condition of liability between the parties. If an account rendered is acquiesced

in by the parties and the correctness of the statement is admitted, then the law will imply a promise to pay whatever balance is thus acknowledged to be owing and due, without further proof; likewise, proof of the retention of a statement of account without objection for more than a reasonable length of time may under certain circumstances operate as proof of an acquiescence in or an admission of the correctness of the statement of account and permit the legal inference that an account stated has been established. * * * The balance must be struck under such circumstances as to import a promise of payment on the one side and acceptance on the other. The balance must be arrived at as the express or implied result of computation and agreement."

The defendants' contention that the amount in the present case is too great to establish an account stated is without merit. It is only necessary that the parties in some manner agree that a liability in a certain amount exists regardless of the size of that amount. A review of the evidence in the present case shows that numerous itemized statements were sent and received without objection as to the amount or the manner of charging. After the bills were received, defendants continued to request further services of Kittler on a number of occasions. The statements were retained for a reasonable length of time without any questions, indicating acquiescence in the amount. The statements were itemized and sufficiently specific to inform defendants and enable them to make independent computation. In any event, it cannot be said as a matter of law that an account stated should not have been considered or that the evidence would not support the verdict.

The defendants' final allegation of error is that the verdict against Gale Institute and Industrial Park on their counterclaim for abuse of process was contrary to law and the manifest weight of the evidence. In Hoppe v. Klapperich, 224 Minn. 224, 231, 28 N. W. 2d 780, 786 (1947), we stated:

"* * * The essential elements of an action for abuse of process are only two, namely, (a) the existence of an *ulterior*

*purpose,* and (b) the act of using the process to accomplish a result not within the scope of the proceeding in which it was issued, whether such result might otherwise be lawfully obtained or not. The gist of the action is the misuse or misapplication of the process, *after it has once been issued,* for an end other than that which it was designed to accomplish." (Italics supplied in part.)

The court went on to observe that the test is whether the process was used to accomplish an unlawful end for which it was not designed or intended, or to compel a party to do a collateral act which he is not legally required to do. It was also noted that there must be injury to either person or property and that indirect injury to business or good name is insufficient. Behrendt v. Rassmussen, 234 Minn. 97, 47 N. W. 2d 779 (1951). See, also, Rosvall v. Provost, 279 Minn. 119, 155 N. W. 2d 900 (1968), emphasizing "willfulness."

In its instructions, the trial court reiterated these elements of a claim for abuse of process. The defendants did not object to the instructions or question their appropriateness in their motion for a new trial. Therefore, the only remaining question is whether the evidence adequately supports the jury's verdict. See, Miller v. Hughes, 259 Minn. 53, 105 N. W. 2d 693 (1960).

Unfortunately, contrary to Rule 128.01(3), Rules of Civil Appellate Procedure, defendants fail to inform this court in their briefs what evidence supports a verdict in their favor.[3] They only contend that no services were rendered to the corporation and that it was managed independently, with the Sheehans only withdrawing money as shareholders. On the basis of the evidence, the jury could reasonably conclude that the claim was not established. It was not shown that plaintiffs willfully attempted to accomplish a result for which the process was not designed

---

[3] Rule 128.01(3), Rules of Civil Appellate Procedure, reads in part: "* * * Where it is claimed that a verdict * * * is not sustained by the evidence, the evidence, if any, tending directly or by reasonable inference to sustain the verdict * * * shall be summarized."

or intended, or to compel an act which was not otherwise legally required. On the contrary, the corporations were joined as defendants and their property garnished because they were alleged to be merely the alter ego of the Sheehans. The fact that plaintiffs' cause of action was dismissed as to Gale Institute and Industrial Park did not establish their counterclaim against plaintiffs. In addition, it is questionable whether they sustained any damage from being joined as defendants, which is required to establish a claim for abuse of process. Thus, the evidence is insufficient to establish abuse of process.

It is particularly important to point out that this matter was thoroughly and competently tried by experienced counsel. For almost 3 weeks, a jury of 12 men and women heard all of the testimony and received numerous documents relating to the issues in this case. The jury was properly instructed by the court as to the law of the case, and the jury rendered a unanimous verdict after due deliberation. The parties have had their day in court.

We find no error. The trial court is affirmed.

Affirmed.