CONTINENTAL CASUALTY COMPANY v.
CLAIR E. KNOWLTON AND ANOTHER.
JAMES G. PAULOS, RESPONDENT.

232 N. W. 2d 789.

August 22, 1975—No. 45172.

*Thiel, Sorenson & Hansing* and *Russell A. Sorenson,* for appellant.

*James G. Paulos,* pro se, for respondent.

Heard before Sheran, C. J., and MacLaughlin and Knutson, JJ., and considered and decided by the court en banc.

KNUTSON, JUSTICE.*

Clair E. Knowlton is designated in the briefs submitted here as defendant appellant and as appellant third-party defendant. For clarity, we will refer to him by his name, Knowlton.

This is an appeal by Knowlton from a judgment and an order denying his motion for amended findings of fact and conclusions of law or, in the alternative, for a new trial.

Prior to June 4, 1966, Knowlton was employed as a systems management engineer by Control Data, Inc. On that date, he was involved in an automobile accident in which, he contends, he was totally disabled. At the time, Control Data carried a group disability income benefit policy with plaintiff, Continental Casualty Company, herein Continental. Control Data also carried a group

---

*Retired Chief Justice acting pursuant to Minn. St. 2.724.

health insurance policy with Northwestern National Life Insurance Company, but liability under that policy is not involved in this appeal. After the accident, Knowlton submitted claims to both insurance companies without the assistance of counsel. Benefits were denied by Continental apparently on the grounds that Knowlton was not totally disabled and that he had failed to comply with policy provisions. Thereafter Knowlton contacted James G. Paulos, an attorney at law, designated herein as respondent defendant and as respondent third-party plaintiff. He will be referred to hereafter as Paulos. Knowlton and Paulos then executed a contract providing for a contingent fee of 40 percent.

An action was brought against General Motors Corporation alleging negligence in the manufacture of the car driven by Knowlton at the time of the accident. Other actions were brought against Knowlton for medical and hospital bills, all of which were disposed of with the assistance of Paulos. The outcome of these actions is not of any material importance in this appeal.

After denial of liability by Continental, Paulos, on behalf of Knowlton, commenced an action for benefits against that company on the policy of insurance carried by Control Data. After trial by jury, judgment was ordered in favor of Knowlton. However, the trial court thereafter granted Continental a new trial. Prior to the new trial, a settlement was effected between Knowlton, represented by Paulos, and Continental. A release was signed under the terms of which Knowlton was to receive a lump-sum settlement of $28,386.01 for all claims and benefits accruing prior to November 15, 1972. Knowlton thereupon executed a release dated November 15, 1972, which reads as follows:

"RELEASE

"KNOW ALL MEN BY THESE PRESENTS, that Clair E. Knowlton, in consideration of the sum of Twenty-eight Thousand Three Hundred Eighty-six and 01/100ths Dollars ($28,386.01) to him in hand paid, the receipt of which is by him acknowledged, does

204

hereby for himself and his heirs, executors and administrators, release and forever discharge, Continental Casualty Company from any and all manner of claims, demands, damages, causes of action or suits that he may now have arising out of, or in any way connected with, any transaction, occurrence, matter or thing of any kind occurring on or prior to November 15, 1972, including, but not limited to, any and all manner of claims, demands, damages, causes of action or suits that he may now have under Group Policy No. SR 183604 issued by Continental Casualty Company, insuring employees of Control Data Corporation and its fully owned subsidiaries, for benefits or indemnity due or payable thereunder on or at any time prior to November 15, 1972.

"The Undersigned Agrees and Acknowledges that Continental Casualty Company admits no liability to the undersigned, or others whatsoever, particularly any liability or obligation to pay to the undersigned any benefits or indemnity under the aforesaid insurance policy by reason of any incident, circumstance, matter or thing whatsoever occurring at any time after November 15, 1972. The undersigned further agrees and acknowledges that, with respect to any claim or demand the Undersigned may hereafter make for benefits or indemnity under the aforesaid insurance policy by reason of any incident, circumstance, matter or thing whatsoever occurring at any time after November 15, 1972, Continental Casualty Company does not waive and shall not be estopped or otherwise barred from asserting any and all of its rights or defenses under the terms and provisions of the aforesaid insurance policy, which rights and defenses are expressly reserved, including, but not limited to, its right to examine the person of the undersigned when and so often as it may reasonably request during the pendency of any claim by the undersigned under the aforesaid insurance policy.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 15th day of November, 1972.

/s/ CLAIR E. KNOWLTON"

The action was then dismissed with prejudice.

Pursuant to this release, a check was issued by Continental, payable jointly to Knowlton and Paulos, for $28,386.01. It was endorsed by both Knowlton and Paulos and deposited in Paulos' trust account. Paulos thereafter remitted a check to Knowlton in the sum of $16,167.46, representing 60 percent of the face amount of the settlement, less costs and disbursements. Knowlton kept the check but has not negotiated it.

On November 27, 1972, Paulos advised Continental that he was entitled to 40 percent of each future benefit check due Knowlton under the policy and asked that the checks be made payable to them jointly. Continental complied, issuing checks totaling $3,344.60, which represented monthly payments of $477.80 for the period from November 15, 1972, to June 15, 1973. Knowlton refused to endorse these checks. Continental sent inquires to Knowlton, which went unanswered. It then commenced this action for a declaratory judgment to determine to whom it should make future payments. After trial without a jury, the court made findings and  conclusions and ordered judgment declaring that Paulos was entitled to 40 percent of all future disability payments and requiring Continental to divide all future payments so as to pay 40 percent directly to Paulos and 60 percent to Knowlton. This appeal followed.

The questions involved are (1) whether the trial court's finding of fact to the effect that the contingent fee contract between Knowlton and Paulos provided that Paulos was to receive 40 percent of all sums collected from Continental in connection with any claim under the disability insurance policy is clearly erroneous; (2) whether the trial court erred in failing to hold the contract void as overreaching and unconscionable; and (3) whether the trial court erred in holding that the contract was not barred by Minn. St. 550.39.

■ At the outset, it will be noted that Knowlton has conceded that Paulos was entitled to 40 percent of the settlement for which the release quoted above was issued. So, the only thing involved

as far as Paulos' compensation is concerned is whether he is entitled to 40 percent of the monthly payments coming due after the settlement. In appellant's brief, we find the following:

"It is submitted by defendant Knowlton that the settlement expressly precludes and *excludes the subsequent monthly payments* made by Continental Casualty Co. to Knowlton." (Italics supplied.)

In a subsequent summary, we find the following:

"* * * That the compensation to which Mr. Paulos is entitled for the results of his efforts in obtaining a settlement of the litigation with Continental Casualty Co. is covered in finding two which are not appealed."

Conclusion of law No. 2 reads:

"That defendant Paulos was, and is, entitled to an amount equal to forty percent (40%) of the aforementioned $28,386.01 paid to defendant Knowlton by Continental Casualty Company, plus costs and disbursements incurred by him in the amount of $864.15, or $12,218.55."

The construction of this contingent fee contract, therefore, is the main issue in litigation and on this appeal. The fee contract between Knowlton and Paulos was a preprinted contract with blanks filled in by the parties. It reads:

"I hereby retain and employ James G. Paulos, attorney at law, to bring suit upon and to represent me in the prosecution, recovery, or settlement of my claim or cause of action against Continental Casualty Co. for damages arising from certain personal injuries and property damage sustained by me through the negligence of Continental Casualty Co. on 6-4-66 at Mpls., Minn. in the State of Minnesota, and I hereby agree to pay him for his services rendered and to be rendered pursuant to this retainer and employment a sum equal to 40%[1] of any sum thereof which

---

[1] In the actual contract, a printed figure "33 1/3%" was scratched out and "40%" was written in in ink.

I shall recover from the said Continental Casualty Co. on my said claim and cause of action on trial in Court, or which I shall receive in settlement thereof, whether the settlement be made by me direct or through the said James G. Paulos or any person or agency whatsoever together with all reasonable costs and necessary advances and expenses, if any, paid or incurred by the said James G. Paulos for and in connection with the preparation, prosecution and handling of my said claim and cause of action. It is further agreed no settlement will be made without the approval of the injured party.

/s/ CLAIR E. KNOWLTON

"CONSENT

"I hereby accept the above claim and cause of action and agree to prosecute the same to settlement or judgment on the terms set forth above.
2-18-70

/s/ JAMES C. PAULOS"

The two phrases in the contract requiring construction are: (1) "for his services rendered and to be rendered pursuant to this retainer and employment," and (2) "40% of any sum * * * which I shall recover * * * on my said claim and cause of action * * * or which I shall receive in settlement thereof."

Knowlton contends that this latter phrase should be interpreted to mean that Paulos is entitled to 40 percent of the lump-sum settlement paid as a result of the release signed by Knowlton. Paulos, on the other hand, contends that the contract should be construed so that he is entitled not only to 40 percent of the lump-sum settlement, but also to 40 percent of all monthly benefit payments made to Knowlton as a result of his permanent disability claim without limitation.

The trial court agreed with Paulos and construed the contract as follows:

"That on or about February 18, 1970, in consideration for defendant Paulos representing defendant Knowlton in the prosecu-

tion and recovery of defendant Knowlton's claims against Continental Casualty Company for disability benefits under Group Policy No. SR183604 issued to employees of Control Data Corporation, defendant Knowlton agreed to pay defendant Paulos for his professional services forty percent (40%) of all sums recovered by defendant Knowlton from Continental Casualty Company in connection with said claims under the aforementioned insurance policy, together with all reasonable costs and necessary advances and expenses paid or incurred by defendant Paulos for or in connection with the preparation, prosecution and handling of said claims, which agreement defendant Knowlton made voluntarily and with full understanding of the same."

The trial court considered the question of construction of this contract to be one of fact. Ordinarily, construction of a contract for compensation of an attorney is treated no differently in this regard than is any other contract. In the case of Holt v. Swenson, 252 Minn. 510, 514, 90 N. W. 2d 724, 727 (1958), we said:

"In passing on the sufficiency of the evidence, it is to be borne in mind that a party has an unrestricted right to contract with his attorney as to compensation for services and the measure and mode thereof, and that the contract may be either express or implied. Furthermore, an express fee contract may be oral or written. It is of no significance that a contract provides for a contingent fee since contingent fee contracts are valid—unless they are in contravention of public policy—and they are to be condemned only where an attorney has taken advantage of a client's circumstances to exact an unreasonable or unconscionable proportion of the client's claim. We are, of course, not concerned here with any contention that an unconscionable contingent fee is involved, but simply with the basic question of whether the parties by their words and conduct created a contract for a contingent fee.

"The essentials of an express fee contract for legal services are the same as for any other contract of employment and are

governed by the ordinary rules of contract law. An offer must be sufficiently definite to form the basis of a contract. If an offer is so indefinite as to make it impossible for a court to decide what it means and to fix exactly the legal liabilities of the parties, its acceptance cannot result in an enforceable contract."

See, also, In re Estate of London, 218 Minn. 349, 16 N. W. 2d 186 (1944).

Viewing the evidence in the light most favorable to the findings, as we must, the findings should not be disturbed on appeal by this court unless clearly erroneous. Rule 52.01, Rules of Civil Procedure. While the evidence of intent of the parties is not as clear as we would wish, there is sufficient evidence, including the manner in which the original case was handled and the settlement and the language of the release, from which the court could infer that Paulos was to share in the entire recovery and not only a part of it. Knowlton admitted under cross-examination that he had originally discussed a 45-percent contingent fee with Paulos and, having objected to that fee, signed the contract which provided for a 40-percent contingent fee. He testified that he did have an understanding of the meaning of the contract and understood that Paulos would be entitled to 40 percent of "all returns over and above the contractual liability or obligation of the insurance company." Of course, this claim, as the trial court implicitly found, is hard to accept. When asked how he thought Paulos would be compensated if they lost the action against Continental, Knowlton testified that he thought he would be billed for Paulos' time.

The case of Blazek v. North American Life & Cas. Co. 265 Minn. 236, 121 N. W. 2d 339, 99 A. L. R. 2d 445 (1963), involved a contingent fee contract remarkably similar to the one in the present case. The only question in that case was whether the attorney's charging lien attached to future monthly disability insurance payments as well as to the judgment for back benefits that resulted from the action against the company. Although the

construction of the contingent fee contract was not at issue, the court found it necessary to consider the nature of the future benefits in order to decide whether the lien attached to them. In deciding that future benefits were "money or property involved in or affected by any action or proceeding in which [the attorney] may have been employed," the court stated:

"We find untenable the contention of plaintiff and defendant that the judgment which Mr. Carr [attorney lienor] secured for Mr. Blazek decided nothing except the amount to which plaintiff was entitled at the time of verdict. While it is true that proof of continuing disability is a prerequisite to future payments, the issues laid to rest by intervenor's efforts may not be lightly disregarded. In response to plaintiff's original complaint, defendant interposed an answer asserting the following defenses: (1) That the company received no notice within the time required by the policy; (2) that plaintiff was not disabled within 60 days of the accident; (3) that plaintiff was not under medical treatment as required by the policy; (4) that the period of disability did not continue under any circumstances beyond February 24, 1954; (5) that the policy was terminated by mutual agreement; and (6) that the plaintiff's application contained false and untrue answers concerning prior injuries.

\* \* \* \* \*

"In the light of the history of these proceedings, we have no difficulty in holding that intervenor has successfully established, over vigorous opposition, plaintiff's continuing right to compensation, subject only to periodic proof of disability." 265 Minn. 238, 121 N. W. 2d 341, 99 A. L. R. 2d 449.

The case of Van Dale v. Karon, 232 Wis. 27, 285 N. W. 781 (1939), also involved a contingent fee contract very similar to the one in this case. The Wisconsin court, as in Blazek, held the contingent fee contract which provided that counsel would be paid "one third of any sum or sums obtained in settlement or suit on the above claims" applied to future monthly disability bene-

fit payments, stating that the "benefits in question flow from the judgment in favor of the plaintiff which was secured by the defendants." 232 Wis. 33, 285 N. W. 783.

We think the same is true here. Establishment of eligibility for monthly disability benefits was the result of successful prosecution of the action against Continental by Paulos, and the trial court was justified in finding that under the contingent fee contract the parties intended the contingent fee would apply to all benefits resulting from the litigation or settlement of the claim against Continental.

■ The next question is whether the contingent fee contract was so unconscionable and overreaching that it should be held to be against public policy.

It is true that on the face of it the compensation that will ultimately be received by Paulos seems large. In addition to the 40 percent of the original amount of the settlement, he will receive 40 percent of all future monthly benefit payments, which amounts to approximately $2,300 for each year that Knowlton lives and remains disabled. Knowlton is 47 years of age. His life expectancy is such that this could amount to a sizable sum. However, whether a contract between client and attorney is overreaching and unconscionable is generally a question of fact for the trial court.

In the case of Kittler & Hedelson v. Sheehan Properties, Inc. 295 Minn. 232, 203 N. W. 2d 835 (1973), we said that the right to enter into fee arrangements with an attorney is protected by Minn. St. 549.01, which provides, in part, that "[a] party shall have an unrestricted right to agree with his attorney as to his compensation for services, and the measure and mode thereof * * *." We also stated:

"The essentials of such contracts, whether oral or written, express or implied, are the same as any other contracts. Holt v. Swenson, 252 Minn. 510, 90 N. W. 2d 724 (1958). When a fee agreement is fairly entered into with the client and involves no

fraud by the attorney, it is as valid and binding as other contracts not involving a fiduciary. Eriksson v. Boyum, 150 Minn. 192, 184 N. W. 961 (1921). Even if the amount of compensation is altered after commencement of the employment, that fact by itself will not invalidate the contract. Anker v. Chicago Great Western R. Co. 144 Minn. 216, 174 N. W. 841 (1919)." 295 Minn. 235, 203 N. W. 2d 838.

We do agree that where a fee contract seems to provide for more than the ordinary charge as does this one, it should be closely scrutinized to see that there is no overreaching. In Kittler, we also said:

"* * * The Sheehan brothers were experienced businessmen, knowledgeable about attorney-client relationships. This court has previously recognized such experience as a factor indicating less susceptibility to overreaching." 295 Minn. 236, 203 N. W. 2d 838.

While there is no evidence in this case that Knowlton was familiar with attorney-client relationships, it is true that he was a college graduate. We must also take into consideration the fact that after the accident in which he was disabled, he brought an action against General Motors Corporation for negligence in the manufacture of the car. He was also sued by the people with whom he collided. Other actions were brought against him by doctors and the hospital where he was treated. Paulos apparently handled all of these matters and was paid nothing for them, so that his whole compensation came out of his recovery against Continental. The burden of proving that a fee charged by an attorney is unconscionable or unreasonable rests upon the party asserting it. In the case of Blazek v. North American Life & Cas. Co. 265 Minn. 236, 241, 121 N. W. 2d 339, 343, 99 A. L. R. 2d 445, 451, we referred with approval to Van Dale v. Karon, *supra,* in the following language:

"* * * The Wisconsin court held that the arrangement permitting attorney's fees to be paid out of monthly installments

was neither unreasonable nor unconscionable; that the benefits to the insured flowed from the judgment in his favor; and since the attorneys had established plaintiff's right to future disability compensation, it concluded (232 Wis. 33, 285 N. W. 784):

" '* * * It appears that plaintiff [client] began this action moved by an after-thought resulting from a desire to avoid an obligation he was ready enough to assume when he wanted the defendants [attorneys] to represent him in his efforts to set aside the settlement he had made with the insurance company.' "

It should also be kept in mind that at the time Knowlton was sued by the people with whom he collided, he had no liability insurance. While the record is not clear, we assume he was also financially unable to respond to any damages recovered against him or to pay attorneys fees based upon the time actually spent on all the matters handled for him by Paulos. Thus, a contingent fee contract was his only practical solution. In Hollister v. Ulvi, 199 Minn. 269, 276, 271 N. W. 493, 497 (1937), we said:

" '* * * Contracts for contingent fees are as much for the benefit of the client as for the attorney, because if the client has a meritorious cause of action, but no means with which to pay for legal services unless he can, with the sanction of the law, make a contract for a contingent fee to be paid out of the proceeds of the litigation, he cannot obtain the services of a law-abiding attorney, and if perchance he should find one who would secretly make with him a contract in violation of the law, he might put himself in unsafe hands.' 2 R. C. L. § 121, pp. 1039-1040."

When we take into consideration all of the work done for Knowlton by Paulos, we conclude that the contract was neither unconscionable nor unreasonable. In Kittler & Hedelson v. Sheehan Properties, Inc. *supra,* we sought to establish some factors that should be taken into consideration in determining whether a fee is unreasonable. We included the following:

"* * * (1) The time and labor required; (2) the responsi-

bility assumed; (3) the magnitude of the principal amount; (4) the results obtained; (5) the fees customarily charged for similar services; (6) the experience, character, reputation, and ability of counsel; (7) the fee arrangements; (8) the circumstances under which the services were rendered; (9) the nature and difficulty of the proposition involved; (10) the doubtful solvency of the client and the apparent difficulties of collection; (11) the anticipation of future services; and (12) the preclusion of other employment." 295 Minn. 236, 203 N. W. 2d 839.

In Eriksson v. Boyum, 150 Minn. 192, 197, 184 N. W. 961, 963 (1921), we said:

"Although the amount of compensation awarded by the trial court seems large, we are satisfied, in view of the substantial benefits accruing to defendant as the result of that litigation, that the amount awarded is not out of proportion to the importance of the case to defendant and the services rendered, and we approve of the allowance made."

The same is true here.

■ The final question is whether the trial court erred in holding that the contract was not barred by Minn. St. 550.39. That statute reads:

"The net amount payable to any insured or to any beneficiary under any policy of accident or disability insurance or under accident or disability clauses attached to any policy of life insurance shall be exempt and free and clear from the claims of all creditors of such insured or such beneficiary and from all legal and judicial processes of execution, attachment, garnishment, or otherwise."

While the trial court held that Knowlton was estopped from asserting this statute because he had voluntarily accepted, though never negotiated, a check from Paulos for 60 percent of the lump-sum settlement, we doubt that this conduct could be the basis of an estoppel or a waiver. One can claim an estoppel only if he can show that he was led to change his position to his

detriment by the other party's conduct. See, Kavalaris v. Cordalis, 219 Minn. 442, 18 N. W. 2d 137 (1945). There is nothing in the record to show that Paulos in any way changed his position as a result of Knowlton's acceptance of the check. Nevertheless, we think the trial court reached the right result. This statute, obviously, should not be construed so as to prevent an attorney from collecting a contingent fee out of the proceeds of insurance which were recovered due to his work and activity. We do not think the legislature so intended the statute, and if that were to be the construction, no attorney would ever undertake litigation involving accident or disability insurance on a contingent fee arrangement. This court has in other areas uniformly held that the lien statutes are to be construed as exceptions to the exemption statutes and that exempt property is nevertheless subject to statutory liens. See, McPherson v. University Motors, Inc. 292 Minn. 147, 193 N. W. 2d 616 (1972); Halsey v. Svitak, 163 Minn. 253, 203 N. W. 968 (1925); Flint v. Luhrs, 66 Minn. 57, 68 N. W. 514 (1896). We conclude that this rule should apply as well to an attorney's lien action brought against an insurance company as to any other lien.

Affirmed.