United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 1, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-31000
_____

Mervin H. Wampold
                    Plaintiff-Appellee,

versus

E. Eric Guirard & Associates,
   Thomas R. Pittenger, and
      Steven A. Debosier
                    Defendants-Appellants


E. Eric Guirard and Associates,
   Thomas R. Pittenger
                    Plaintiffs-Appellants,

versus

Mervin H. Wampold,
                    Defendant-Appellee.

_____

Appeal from the United States District Court
For the Middle District of Louisiana
_____


Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

     We are asked to determine whether, under Louisiana law, the

phrase "gross proceeds of recovery" in a standard-form,

contingency-fee contract includes future, post-judgment disability

benefits.  Concluding that it does not, we affirm the judgment of

the district court.

**I**

The present dispute over legal fees arises out of Thomas Pittenger's representation of Mervin Wampold in a lawsuit against Wampold's insurance provider, Paul Revere. Wampold suffered serious injuries in a car accident in 1998; he filed a claim under his insurance policy, which provided for $5,100 monthly disability payments during the period of any disability as defined in the policy. Paul Revere denied coverage, and Wampold filed suit in Louisiana state court. Pittenger provided a standard-form, contingency contract, entitling him to attorneys' fees in the form of "an undivided vested interest in [Wampold's] claim, to be paid from the gross proceeds of recovery" in certain percentages.[1] Neither contract mentioned whether Pittenger would recover a portion of future, post-judgment disability payments.

In the state-court lawsuit, the jury returned a verdict in Wampold's favor, finding that his disability was covered under the policy and that his inability to perform his usual work was the result of an "injury" not an "illness," entitling Wampold to monthly disability benefits as long as he remained disabled.[2]

---

[1]The first contract, undated, set (via handwritten edits to the standard-form contract) the fee rate at "25% if settled before trial" and "33% in the event the claim is tried." The second contract, signed March 14, 1999 after commencement of the litigation, set (via the standard-form contract's unedited terms) the fee rate at "1/3% [sic] if settled without suit; 40% in the event that suit is filed."

[2]Had the jury determined that Wampold's injury was due to an "illness," rather than an "injury," Wampold would only receive monthly disability benefits until he was sixty-five years old.

Judgment was entered in September 2000.[3]  Following a hearing, the district court awarded Wampold penalties and attorneys' fees;[4] Wampold received nearly $400,000, of which Pittenger recovered one third.  Wampold, represented by Pittenger, sued Paul Revere a second time for recovery of disability benefits, penalties, and attorneys' fees for August and September 2000, the two months between the jury's verdict and entry of the court's judgment. Following settlement in January 2003, Pittenger sent Wampold a final disbursement statement, which Wampold signed, acknowledging that "[t]his constitutes a full and final settlement of all amounts due me [Wampold] arising out of this matter."  Paul Revere continues to pay disability payments to Wampold.

The present litigation began in March 2003 when Pittenger claimed a right to either a percentage of each post-judgment monthly disability benefit check or a lump sum representing the present value of the future benefit stream based on actuarial tables.  After a joint stipulation of facts, both parties moved for summary judgment.  The district court granted summary judgment to

---

[3]The judgment awarded Wampold "monthly benefits for total disability due to injury in the amount of $5,100 per month, from October 30, 1998 through the date of judgment, subject to the Paul Revere policy elimination period and waiver of premium provisions."

[4]Louisiana Revised Statute § 22:657(A) requires prompt payment under any insurance contract absent "just and reasonable grounds for delay" and provides for "a penalty payable to the insured of double the amount" of benefits due during the period of delay, "together with attorney's fees" as determined by the court.  LA. REV. STAT. ANN. § 22:657.  The judgment awarded Wampold "penalties of one hundred percent (100%)" of the monthly benefits "from March 15, 1999 through July 28, 2000."  The judgment also awarded Wampold "attorney's fees as provided by 22:657 in the amount of 33 1/3% of the total disability benefits and penalties due to Dr. Wampold."

3

Wampold, interpreting the term "gross proceeds of recovery" against Pittenger as not including Wampold's future disability benefits. We have jurisdiction under 28 U.S.C. § 1291.[5]

## II

Louisiana allows lawyers to enter into contingency-fee agreements with their clients,[6] and they are construed in line with standard rules of contract interpretation.[7] If unambiguous, the plain terms govern;[8] if ambiguous, resort to default rules of interpretation and the parties' intent is necessary.[9] We examine *de novo* the contingency-fee agreement.[10]

Our question is whether the phrase "gross proceeds of recovery" includes post-judgment, future disability payments. Pittenger argues that the phrase covers "everything recovered as a

---

[5]Wampold, having moved to Florida, filed a declaratory judgment action in federal court based on diversity of citizenship. Pittenger filed his own claim, also invoking diversity jurisdiction, and the claims were consolidated.

[6]LA. REV. STAT. ANN. § 37:218(A) ("By written contract signed by his client, an attorney may acquire as his fee an interest in the subject matter of a suit . . . ."); *id.* § 37:218(B) ("The term 'fee' . . . means the agreed upon fee, whether fixed or contingent . . . .").

[7]*See Chittenden v. State Farm Mut. Ins. Co.*, 788 So.2d 1140, 1147 (La. 2001); *Classic Imports, Inc. v. Singleton*, 765 So.2d 455, 459 (La. App. 4 Cir. 2000) (construing a contingency-fee contract in line with standard rules of contract interpretation).

[8]LA. CIV. CODE ANN. art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

[9]LA. CIV. CODE ANN. art. 2053 ("A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.").

[10]*Borden, Inc. v. Gulf States Utilities Co.*, 543 So.2d 924, 928 (1989).

result of Pittenger's representation."  Because Wampold would not be receiving benefits but for Pittenger's representation, so the argument goes, those future benefits must be included.  Although we see the logic in this contention, it runs counter to the unambiguous terms of the parties' agreement.[11]

We construe the words of the agreement in line with their generally prevailing meaning.[12]  Pittenger contends, and Wampold does not dispute, that "gross proceeds" includes the total amount of money received without adjustment for deductions or subtractions.  Pittenger, however, fails to offer a definition of

---

[11]Although not discussed by either party, several cases from various state supreme courts support Pittenger's argument.  *See Strobe v. Kitley*, 249 N.W.2d 667 (Iowa 1977); *Continental Cas. Co. v. Knowlton*, 232 N.W.2d 789 (Minn. 1975); *Blazek v. N. Am. Life & Cas. Co.*, 121 N.W.2d 339 (Minn. 1963); *Van Dale v. Karon*, 285 N.W. 781 (Wisc. 1939) (all holding that a lawyer recovered a portion of post-judgment, monthly disability benefits under a contingency-fee agreement).  Three of these cases are easily distinguishable: In *Strobe*, *Blazek*, and *Van Dale*, the client paid a portion of monthly disability benefits received post-judgment to the lawyer; it was only subsequently that coverage was disputed under the contract.  *Strobe*, 249 N.W.2d at 670 (noting that the client paid a proportional "part of policy benefits received for several months after entry" of the judgment); *Blazek*, 121 N.W.2d at 237 (noting that the client paid one-third of monthly payments "for some time" after entry of the judgment); *Van Dale*, 285 N.W. at 783 ("The [client] paid one-third of each $50 benefit for several months and then decided he would like to be relieved of that obligation too.").  Here, in contrast, there is no evidence that Wampold paid any portion of post-judgment benefits to Pittenger.  This lack of payment is telling, as it is well-established that course of performance under a contract is highly probative of the parties' intent.  *See* LA. CIV. CODE ANN. art. 2053.  *Continental*, although not involving payment, is also distinguishable.  There, the client offered some testimony suggesting that the parties discussed the lawyer's recovery of a portion of post-judgment monthly benefits, and, although recognizing that "the evidence of intent of the parties is not as clear as [they] would like," the court deferred to the trial court's finding that such fees were included in the agreement.  *Continental*, 232 N.W.2d at 795.  Here, there is no evidence in the record of such discussion, and there are affidavits from Wampold and his financial advisor that expressly deny any discussions.

[12]LA. CIV. CODE ANN. art. 2047 ("The words of a contract must be given their generally prevailing meaning.").

5

"recovery," the operative word in this case. *Black's Law Dictionary* provides two relevant definitions: "2. The obtainment of a right to something (esp. damages) by a judgment or decree. 3. An amount awarded in or collected from a judgment or decree."[13] Both definitions tie the total amount of money received, prior to any deductions--that is, the "gross proceeds"--to that obtained "by" or "from" a "judgment or decree." In short, the phrase "gross proceeds of recovery" contains an inherent limit: it only includes money received by Wampold as a result of the judgment. And here, the judgment entered by the trial court accepting the jury's verdict orders Paul Revere to pay monthly disability benefits to Wampold "from October 30, 1998 through the date of judgment, subject to the Paul Revere policy elimination period and waiver of premium provisions." Pittenger received a portion of fees for the payments between October 30, 1998 and the date of judgement; no one contests whether those fees were contemplated by the parties. As the judgment demands no more, recovery should be so limited.

While we find the agreement unambiguous, it is not sufficient that Pittenger establish some ambiguity in the language, because Louisiana requires any ambiguity in a contingency-fee agreement to be construed against the attorney. In cases of doubt, "a provision in a contract must be interpreted against the party who furnished

---

[13]BLACK'S LAW DICTIONARY 1302 (8th ed. 2004); *see also* THE RANDOM HOUSE COLLEGE DICTIONARY 1104 (rev. ed. 1982) (defining "recovery," in part, as "the obtaining of right to something by verdict or judgment of a court of law").

its text;"[14] here, it is undisputed that Pittenger provided both contingency-fee contracts. Moreover, "A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."[15] Again, it is undisputed that the contracts at issue fit the bill for a construction against Pittenger: Both contracts are pre-printed, standard-form contracts with blanks for names, dates, and signatures. Both contain nearly identical terms, with only the hand-written changes to the fee amounts on the first contract.[16] Both provisions of article 2056 counsel against Pittenger's expansive interpretation of "gross proceeds of recovery."

Likewise, Louisiana's Rules of Professional Conduct impose strict requirements on contingency-fee agreements. Rule 1.5(c) provides: "A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined . . . ."[17] Rule 1.5(c) is, in effect, a heightened specificity standard for contingency-fee agreements, necessitated by the sound public policy

---

[14]LA. CIV. CODE ART. 2056; *see also Golz v. Children's Bureau of New Orleans, Inc.*, 326 So.2d 865, 869 (La. 1976) (noting that the drafting party is in a position of superior bargaining power).

[15]LA. CIV. CODE ART. 2056; *see also Doucet v. Standard Supply & Hardware Co.*, 250 So.2d 549, 551 (La. App. 3 Cir. 1971) (considering previous version of art. 2056).

[16]*See infra* note 1. As the district court noted, the handwritten changes to the terms of the contracts, accompanied by the initials of Pittenger ("T.R.P."), are further evidence that Pittenger furnished the text of the agreement. *See Wampold v. E. Eric Guirard*, No. 03-253-A, at 7 n.5 (M.D. La. Sept. 20, 2004).

[17]LA. RULES OF PROF'L CONDUCT 1.5(c).

attempting to minimize attorney-client fee disputes. Again, these concerns counsel against Pittenger's interpretation.

The unambiguous language of the contingency-fee agreement, Louisiana's statutory rules of construction, and the Rules of Professional Conduct dictate the result in this case: the phrase "gross proceeds of recovery" does not include future, post-judgment monthly disability benefits. If Pittenger intended to receive a portion of each monthly disability payment from Paul Revere to Wampold, then the attorney-client agreement should have been more specific. Neither contract references post-judgment disability payments; neither contract references insurance; and neither contract references Pittenger's asserted entitlement to a percentage of any future, post-judgment payments. Following the conclusion of the first trial, Pittenger never moved for a new trial on the court's judgment, ordering payment "through the date of judgment." Pittenger did not appeal the first order, nor did he request future disability payments in the second lawsuit, instituted to recover disability payments for the two months between the jury's verdict and the court's entry of judgment. Pittenger's first request for future, post-judgment disability payments came in March 2003, following settlement of the second litigation with Paul Revere. The untimeliness of this assertion weighs against Pittenger's expansive interpretation. Finally, Pittenger submitted, and Wampold signed, two disbursement documents, neither of which made any reference to Wampold's receipt

of post-judgment benefits or Pittenger's entitlement to a share of such benefits.  We find no reason to adopt Pittenger's expansive interpretation.

### III

In sum, the phrase "gross proceeds of recovery" does not include recovery of future, post-judgment monthly disability benefits.[18]  The district court's judgment is affirmed.

---

[18]We also find Pittenger's alternative theories of recovery--unjust enrichment, *quantum meruit*, and *negotiorum gestio*--without merit.  Unjust enrichment and *negotiorum gestio* were not presented below, and so we do not consider them here.  Under Louisiana law, *quantum meruit* is only available in the absence of a contract, which, as discussed, is not the case here.  *See Baker v. Maclay Properties Co.*, 648 So.2d 888, 896 (La. App. 1 Cir. 1995).