GUY T. BISBEE COMPANY v. GRANITE CITY INVESTING
CORPORATION AND OTHERS.
MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,
APPELLANT.[1]

May 2, 1924.

No. 23,820.

**Finding that mortgagee had knowledge of representations sustained.**

1. The evidence supports the finding that the appellant had knowledge of the making of the representations mentioned in the opinion and adopted them when it accepted waivers of respondents' lien rights, which were obtained as the result of such representations.

**Making promise with no intention of keeping it an actionable misrepresentation.**

2. There was sufficient evidence to support the finding that respondents were induced to execute and deliver waivers of their lien rights in reliance upon representations that their claims would be paid out of money furnished by appellant upon the security of a mortgage on the property which was subject to the liens, and that the persons who made the representations knew them to be false and made them to induce respondents to consent to waive priority of their liens. Under this finding the rule is applicable that the making of a promise with no intention of keeping it amounts to an actionable misrepresentation.

**Negligence of lien claimants not a defense.**

3. The fact that respondents may have been negligent in relying upon the representations was not a defense.

**Argument addressed to trial court not conclusive.**

4. The intelligence and business experience of the respondents was a proper matter for the consideration of the trial court, but did not compel the conclusion that they were not deceived by the representations.

**Balancing of equities not necessary.**

5. The court was not required to balance the equities of the parties in determining whether the waivers of respondents' liens should be sustained.

[1] Reported in 199 N. W. 14.

Action in the district court for Stearns county to foreclose mechanics' liens. The case was tried before Roeser, J., who made findings and ordered judgment in favor of various lienholders superior to the liens of appellant and of Wells-Dickey Trust Company, and directed a sale of the hotel premises. From an order denying its motion for a new trial, defendant Massachusetts Mutual Life Insurance Company appealed. Affirmed.

*Barrows & Metcalf* and *Arthur A. Stewart,* for appellant.

*J. D. Sullivan,* for respondent.

LEES, C.

Appeal from the denial of a new trial of an action for the foreclosure of mechanics' liens on the Breen Hotel in the city of St. Cloud.

Appellant claims that the lien of a mortgage it holds has priority over respondents' liens because they waived their right to claim priority. In its answer appellant alleged that the hotel was in process of construction when the owner applied for a loan of $175,-000, to be secured by a mortgage, and that appellant refused to make the loan unless respondents' liens were removed or made subordinate to the mortgage. It alleged that thereupon the respondents executed and caused delivery to be made to appellant of waivers in writing of any right of lien they had which might be superior to the mortgage.

The construction of the hotel was begun in 1919 by a corporation having as its active officers Henry J. Breen and John Hesse. In 1920 the funds of the corporation were running low and it became necessary to float a loan. Paul Cook, who conducted an insurance agency in St. Cloud and who had previously placed loans with appellant, undertook to procure the money. Claude Bennethum was appellant's agent in Minnesota in charge of its loans. After inspecting the property with Cook, he transmitted an application for the loan to appellant. The application was accepted, subject to the condition that a satisfactory bond be furnished to protect the mortgage against existing mechanics' liens. An application for the bond was made to the Maryland Casualty Company, accompanied

by the hotel company's financial statement, which showed that the sum total of the company's assets and the amount of the proposed loan would not cover the cost. of completing the building. Upon that showing the Casualty Company declined to write the bond, unless waivers of liens were furnished sufficient in amount to cover the difference between the cost of completing the building and the funds available for that purpose. Hesse undertook to secure the necessary waivers and obtained respondents' signatures to an instrument which, by its terms, amounted to a waiver of all lien rights. This the Casualty Company would not accept, insisting that each lien claimant should sign a separate waiver of the right of priority over the mortgage. Cook prepared such waivers and he and Hesse procured the respondents' signatures thereto. After referring to appellant's mortgage, the waivers read as follows:

"And the undersigned hereby agrees to protect said mortgage as a first lien * * * prior and superior to any lien or right of lien now filed or claimed * * * against said property."

The trial court found that the waivers were obtained by means of representations made by the hotel company and all parties interested with it that, in consideration of their execution and delivery, the claims of the signers should be paid out of the proceeds of the mortgage loan; that each waiver was signed and delivered upon that express understanding; that none of the claims were paid; that the representations were known to be false by the persons who made them, were made to induce the respondents to give up their lien rights, and were relied upon. The court also found that appellant's agents and the officers and agents of the hotel company were jointly interested in obtaining the waivers, and that appellant had full knowledge of the representations made to obtain them. It was therefore held that the waivers were void and judgment was ordered in respondents' favor for the amount of their liens, with priority over the mortgage.

Appellant's principal contentions are: (1) That the evidence does not sustain the finding with respect to its knowledge of the making of the representations; (2) that the representations were of a prom-

issory nature, and, unless they were made with no intention of fulfilling them, there was no actionable fraud.

1. If Bennethum knew that either Hesse or Cook had represented that respondents' claims would be paid and had assumed to speak for appellant, and with that knowledge accepted the waivers in behalf of his company, the matter of Hesse and Cook's prior authority ceases to be material.

It is well settled that one who adopts the unauthorized act of another, done in his behalf, and receives the benefits thereof, should be held to have adopted and ratified the instrumentalities by which such benefits were obtained. The cases so holding are collected in Roseberry v. Hart-Parr Co. 145 Minn. 142, 176 N. W. 175.

Cook prepared the waivers and testified that he told Bennethum he had to get them to obtain the indemnity bond and that he thought he kept Bennethum informed as to all the details. Asked whether he told him that respondents expected to have their claims paid out of the proceeds of the mortgage loan, he answered: "I didn't have to tell him that. It was understood that was what the money was for." But in the next breath he said: "I never explained to Bennethum any details of the lien waivers."

Hesse testified that Cook brought Bennethum to him in St. Cloud; that he went to Bennethum's office and talked with him about waivers; that he kept him informed as to the progress made in getting them and advised him of whatever he (Hesse) was doing in his efforts to get them; that at one time he and Cook were together at Bennethum's office and talked with him, and that Cook went out to aid him in securing the waivers as a result of the talk. He asserted, however, that the only reason for getting them was the insistence of the Casualty Company that lien claims amounting to at least $60,000 must be waived before the indemnity bond would be written, and that neither he nor Cook were representing Bennethum or his company in anything they did.

Bennethum testified that he never mentioned the subject of waivers to Hesse or Cook, did not know they were getting them or had them until they were turned over by the Casualty Company, but a vigorous and searching cross-examination finally elicited the state-

ment that the matter of waivers was the subject of conversations he had with Hesse "when it came to a show-down."

The general agent of the Casualty Company testified that Cook was the company's local agent at St. Cloud, through whom the application for the bond was received, but that he was not directed to assist Hesse in getting the waivers and must have done so upon his own motion or at the instance of some one other than the Casualty Company. Cook and Bennethum had known each other for 20 years. Cook testified that he had "brokered" loans with him many times, that he had no authority to act on applications, but submitted them to Bennethum for his approval; that he received a commission when loans were accepted, and in this instance received appellant's draft for $1,750 as his commission. Bennethum's explanation of this was that the hotel company agreed to pay a commission of 5 per cent if the loan was made; that one-fifth of it went to Cook and the remainder to him; that appellant issued a voucher to him for $7,025, but he turned it back without cashing it, so in reality appellant received a profit of $7,000 in addition to interest at the rate of 7 per cent on the amount of the loan.

Bennethum knew that the application for the loan would not be accepted unless an indemnity bond was procured. To get the bond, a large portion of the lien claims must be released. Cook was interested in getting his commission. Bennethum was interested in getting $7,000, either for himself or his company. There was a substantial profit to be made if respondents' liens were waived. In the language of Chief Justice Gilfillan, in Knappen v. Freeman, 47 Minn. 491, 50 N. W. 533, the waivers were the instrumentalities by which appellant obtained the fruits of a transaction which it now proposes to disaffirm. The waivers were delivered to appellant before it paid out any money. This indicates its interest in them and that it did not rely solely upon the indemnity bond.

We hold that the court was warranted in making the finding under discussion. In reaching this conclusion we have not lost sight of the principle that one taking a mortgage on land is not obliged to supervise and is not concerned with the conduct of the mortgagor in making his title acceptable. The principle was applied in Wid-

mann v. Olinger, 154 Minn. 208, 191 N. W. 588, a case unlike this because here appellant, through its representatives, took part in clearing the title.

2. Under a well-known rule of law, the courts deny relief to one who was induced to enter into a contract he seeks to avoid in reliance upon a promissory representation. An exception to the rule is recognized whenever it appears that at the time of making the promise the promisor had no intention of fulfilling it, but made it with intent to deceive. The rule and the exception are tersely stated in Hansen v. Daniel Hayes Co. 152 Minn. 222, 188 N. W. 317, as follows:

"A broken promise does not amount to fraud. * * * But, if the party making the promise has no intention of keeping it, the promise becomes an actionable misrepresentation."

Many of the authorities are cited in Nelson v. Berkner, 139 Minn. 301, 166 N. W. 347, a leading case on this point.

Respondents relinquished their lien rights, relying on the representations that they were to receive the amount due them as soon as the waivers could be sent to appellant's home office. They were led to believe that they were to share in the proceeds of the loan. The court found that Hesse and Cook knew that the representations were untrue. Under the findings, this is not a case of a broken promise, but rather one of a promise made with no intention of keeping it. In Bower, Act. Misrep. p. 32, the rule applicable here is stated substantially as follows: A statement of the representor's, or of a third person's intention, readiness or capacity to do anything, or of his expectation as to a matter in futuro, is a representation of the then existence of such intention, readiness or capacity, and is a statement of a fact and not merely a promise. Similar expressions are found in 2 Pomeroy, Eq. Jur. § 877. They fit the facts in the case at bar and bring it within the exception to the general rule recognized by our decisions.

The circumstances were such that bad faith might be inferred. It is always difficult to prove the state of a man's mind at a particular time. Conduct inconsistent with a previous representation

cannot always be attributed to a pre-existing intent to deceive. But where the period of time between the making of a promissory representation and its repudiation is short and there is no change in the circumstances, it is not unreasonable to suppose that the intention manifested by the subsequent conduct was entertained when the representation was made. Dowd v. Tucker, 41 Conn. 197, 60 S. E. 507, 16 L. R. A. (N. S.) 1121, 125 Am. St. 523; Braddy v. Elliott, 146 N. C. 578; Blackburn v. Morrison, 29 Okla. 510, 118 Pac. 402, Ann. Cas. 1913A, 523; Chicago, I. & M. Cent. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. 39.

The hotel company received no money from appellant. After appellant received the waivers and a list of the hotel company's creditors, checks or drafts were issued to the creditors whom appellant chose to pay. For some undisclosed reason, $39,000, a sum slightly in excess of the aggregate amount of respondents' claims, was withheld and is still retained by appellant. The fact that the two amounts are practically the same may be a mere coincidence, or it may indicate that appellant knew more than Bennethum was willing to admit.

Viewing the representations in the light of appellant's subsequent conduct, we sustain the trial court's conclusion that a sufficient showing of actionable fraud was made.

3. In addition to its two principal contentions, appellant urges that respondents were negligent in relying upon the representations in question. The answer to this is that one who intentionally deceives another to his prejudice ought not to be heard to say in defense that the person deceived was negligent in taking him at his word. Kempf v. Ranger, 132 Minn. 64, 155 N. W. 1059.

4. Another contention is that it is unreasonable to suppose that business men having the intelligence and experience possessed by respondents would be deceived by the representations, and that it is more reasonable to suppose that they were willing to take the chance of getting their money after the hotel was completed. This was a matter which might properly be pressed upon the attention of the trial court. It cannot control an appellate court in reviewing the findings of fact.

5. It is urged that appellant will be placed in an unfortunate position if the waivers are not sustained. This is not a case where we are called upon to balance equities, but, if it were, it might be said that presumably appellant is protected by its bond and that the Casualty Company will be the real loser in the end.

Order affirmed.