Thomas W. WOOD, et al., Appellants,

v.

Donald SCHLAGEL, Steven D. Schlagel, et al., Respondents.

No. C3-85-819.

Court of Appeals of Minnesota.

Oct. 29, 1985.

Ronald R. Notermann, Minneapolis, for appellants.

William C. Hudson, Aitkin, for Donald Schlagel.

Michael E. Molenda, Hansen & Molenda, Rosemount, for Steven D. Schlagel, et al.

Considered and decided by POPOVICH, C.J., and WOZNIAK and HUSPENI, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a judgment dismissing appellants' complaint with prejudice. Appellants claim the trial court erred in determining (1) respondents' fraud in misrepresenting the existence of a second mortgage was not actionable, and (2) respondents were not liable to appellants for loss of sale damages following appellants' rescission of a subsequent purchase agreement. We affirm.

## FACTS

In early February 1979, respondents husband and wife Steven D. and Susan C. Schlagel owned recreational land in Aitkin County. Steven Schlagel was a licensed real estate salesperson. Appellants husband and wife Thomas W. and Pamela J. Wood, interested in the purchase of such property, were shown the tract by respondent Donald Schlagel, a real estate broker and father of Steven Schlagel. Thomas Wood had previously purchased and sold six properties.

Appellants entered into a purchase agreement with respondent titleholders through respondent broker on February 19, 1979. Appellants agreed to assume on date of closing a first mortgage on the property of $36,000. An earnest money deposit of $500 was required with an additional $4500 to be paid on closing. At closing, payments under a contract for deed for $7000 plus 8% interest would begin, bringing the total purchase price to $48,154. Closing was set for March 5, 1979.

Prior to signing, Donald Schlagel gave appellants a title opinion assuring them it was current, having been prepared only a few months prior. The opinion dated September 12, 1978, showed title vested in a party other than respondents, and indicated a $360,000 mortgage. Appellants testified they read the opinion and received from Donald Schlagel assurances regarding the discrepancies.

At the time of execution of the purchase agreement, a second mortgage for $21,000 existed on the property. That mortgage secured in part a Small Business Administration (SBA) loan of respondents. Appellants testified they were unaware of the second mortgage at that time. Respondent titleholders testified, however, they and appellants discussed the second mortgage on the date of execution.

On March 5, 1979, closing occurred, appellants delivered a check for $4500, assumed the unpaid balance of $36,112.41 on the first mortgage, and signed the $7000 contract for deed.

On September 13, 1979, appellants listed the property with Donald Schlagel. The agreement did not indicate the second mortgage as debt against the property. Appellants cancelled the listing on June 23, 1980.

On August 4, 1980, appellants arrived at Security State Bank of Aitkin where they were to meet Steven Schlagel to make final payment on the contract for deed. In July 1980, appellants borrowed $8300 from First Bank Northfield in order to meet this pay-

ment. While waiting, appellants were informed by a bank vice president of the second mortgage. Appellants testified this was their first knowledge of the mortgage, they were not informed of its balance, they were assured by Steven Schlagel the proceeds of the contract for deed payment would cover the mortgage, and they were in fear of forfeiting the purchase contract. Appellants gave Steven Schlagel the check for final payment and accepted a warranty deed indicating the second mortgage.

On February 1, 1981, appellants again listed the property, this time with Betty Kovall at Maxwell Realty. Kovall was not made aware of the second mortgage. On March 14, 1981, Kovall obtained a purchase agreement and $500 earnest money from Dr. and Mrs. M.F. Minthorn. The agreement called for cash payment of the $55,500 balance on May 1, 1981, the date of closing, and stated sellers would have 120 days from written objection by buyers to make title corrections.

A few weeks after its execution, appellants began construction of a new house. They planned to finance the construction in part with the proceeds of the Minthorn sale.

A title opinion was prepared on April 10, 1981, and Kovall first became aware of the second mortgage. Both Kovall and appellants contacted Steven Schlagel regarding payment of the second mortgage. Steven Schlagel testified he then initiated release of the second mortgage with the SBA.

Closing did not occur on May 1, 1981. On May 18, 1981, Kovall was mailed a letter from the Minthorn's attorney rescinding their offer "based on the inability of the Sellers to close this transaction on May 1, 1981." Minthorns also demanded return of their earnest money.

In June 1981, appellants took out a $7000 loan from First Bank Northfield to finance the construction of their new house because of the failure to close the Minthorn sale.

On June 12, 1981, respondents Steven and Susan Schlagel satisfied the second mortgage by substitution of collateral with the SBA. Satisfaction was made within 120 days of the Minthorn's objection.

On July 21, 1981, appellants signed a cancellation of purchase agreement with the Minthorns, which provided earnest money was to be retained by sellers. The property continued to be listed with Kovall until October 17, 1982. No sale occurred.

Appellants, alleging fraud and misrepresentation for failure to disclose the second mortgage, sued respondents for damages of $30,000 for loss of sale of the property and interest expense, punitive damages of $50,000, and costs and disbursements. The trial court, sitting without a jury, dismissed appellants' complaint with prejudice and awarded respondents costs and disbursements.

## ISSUES

1. Was there sufficient evidence to determine appellants did not sustain damages by relying on respondents' fraudulent misrepresentation?

2. Was there sufficient evidence to determine appellants, by rescinding the third party purchase agreement, waived their rights to other available remedies?

## ANALYSIS

■ 1. [W]here there has been no motion for a new trial the only questions for review are whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment.

*Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). Here, appellants failed to move for new trial and this court is limited to that scope of review.

■ For fraudulent misrepresentation to be actionable, the damage suffered "must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury." *Davis v. Retrac Manufacturing Corporation*, 276 Minn. 116, 117, 149 N.W.2d 37, 39 (1967).

The trial court found:

The acts of the Schlagels in executing and delivering the contract for deed to the Woods without discussing or referring to the second mortgage in the contract for deed constituted fraudulent and material misrepresentations on the part of all three of them, but there was no reliance by either Thomas or Pamela Wood that there was no second mortgage, and they were not induced to enter into the contract by the false representations. They believed that the second mortgage was the obligation of the Schlagels and would be paid whenever they demanded that it be paid.

Appellants claim they did rely on respondents' misrepresentations because they did not know of the second mortgage until the closing date with respondents, and respondents made assurances on that date the second mortgage would not be a problem.

■ The trial court found, however, appellants were made aware of the second mortgage prior to signing the purchase agreement. "In reviewing decisions of a trial court sitting without a jury, it is not our function to reconcile conflicting evidence adduced at trial but rather to determine whether the trial court's findings are supported by the evidence." *Action Time Carpets, Inc. v. Midwest Carpet Brokers, Inc.*, 271 N.W.2d 36, 40 (Minn.1978). "[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Strouth v. Wilkison*, 302 Minn. 297, 299, 224 N.W.2d 511, 513–14 (1974). Here, sufficient testimony existed to support the trial court's finding.

■ Regarding respondents' assurances, the second mortgage was paid on appellants' demand, even though time lag was involved apparently due to SBA delay. Even if respondents were negligent in satisfying the second mortgage, a broken promise does not amount to fraud. For the promise to be an actionable misrepresentation, respondents must have intended from the start not to fulfill their assurance. *Cf. Guy T. Bisbee Company v. Granite City Investing Corporation*, 159 Minn. 238, 243,

199 N.W. 14, 16 (1924). Nothing in the record indicates this was the case.

■ 2. Appellants claim because respondents did not satisfy the second mortgage prior to the Minthorn closing date, respondents' satisfaction was untimely, causing loss of sale. Appellants assert respondents should have joined in the Minthorn closing and taken assignment of appellants' interest in the Minthorn purchase agreement after which respondents could have brought action against the Minthorns.

The trial court found:

> It is not clear whether or when there was an objection in writing to the Woods' title by the Minthorns. However, even if a written objection because of the second mortgage, which was defendants' only title responsibility, had been made on the date of the purchase agreement executed by Dr. and Mrs. Minthorn, March 14, 1981, it is clear that this mortgage had been satisfied well within the time period allowed, 120 days from the date of a written objection.

The record clearly supports this finding which supports the trial court's conclusions of law. Any action for fraud against respondents for loss of sale cannot stand because any damages suffered by appellants were not proximately caused by respondents. *Davis*, 276 Minn. at 117, 149 N.W.2d at 39.

As the trial court concluded, the Minthorns had no legal right to rescind and their actions constituted an anticipatory breach. Appellants were justified in choosing to rescind, but by so doing they forfeited alternative remedies. Any damages suffered by appellants for loss of sale were caused by appellants' choice of remedy.

3. Appellants' brief was no help in determining this matter. It presented only argument unsegmented by issue and failed to cite case law. *See* Minn.R.Civ.App.P. 128.02.

## DECISION

The trial court properly dismissed appellants' complaint with prejudice. Any fraud

by respondents was not the proximate cause of appellants' damages.

Affirmed.