**LAMPERT LUMBER COMPANY, Respondent,**

v.

**RAM CONSTRUCTION, et al., Appellants.**

No. C7–87–634.

Court of Appeals of Minnesota.

Oct. 20, 1987.

Jerome A. Miranowski, Oppenheimer, Wolff & Donnelly, Minneapolis, for respondent.

Mark E. Fuller, Fuller & Finney, Edina, for appellants.

Heard, considered and decided by POPOVICH, C.J., NORTON and LOMMEN *, JJ.

## OPINION

NORTON, Judge.

This appeal is from a trial court judgment and an order denying a new trial regarding appellants' fraudulent misrepresentation. Appellants claim the trial court erred because (1) the elements of fraudulent misrepresentation are not supported by the evidence and (2) the court improperly calculated interest owing on the unpaid

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

balance of the parties' contract. We affirm.

## FACTS

In about 1977, appellant Howard Boever, on behalf of appellant general contractor Ram Construction, Inc. (Ram), first began purchasing building materials from respondent Lampert Lumber Company (Lampert). It was respondent's practice to require customers to sign a credit agreement when opening a charge account. That agreement provided the customer would pay a 1.33% per month finance charge on overdue payments. Ram arranged more than 100 project purchases with Lampert over the next seven years and each billing statement indicated the finance charge agreement.

In early 1983, Ram prepared a bid concerning construction work in the Amhoist Tower in St. Paul. The project required completion of corridors on floors 19 to 25 and a model condominium on floor 21. Ram received an estimate of $60,255.66 from Lampert for the necessary construction materials. The Amhoist Tower owners awarded Ram the contract and in April 1983, after receiving materials from Lampert, Ram started construction.

During the course of construction, additional materials had to be supplied by Lampert to Ram. An additional billing of $4750.73 resulted. Replacement materials for those of inferior quality were also sent to Ram, which charged back the $3886.75 cost of the materials to Lampert.

In early 1984, confusion existed regarding the proper amount owed Lampert by Ram. Appellant Boever and Lampert manager Robert Hoffman and Lampert salesman Dale Swails met to discuss the problems. Several adjustments were made to the Ram account concerning double billings, billing extension errors, incorrect prices, returned materials, and reversal of certain finance charges. Swails testified all of Boever's complaints were addressed. Apparently the total amount owing was not expressly discussed. Lampert believed Ram owed $43,271.37, while Boever thought only $20,033.71 was owing.

Lampert complained to Boever regarding untimely payments and considered filing a mechanics' lien by the February 20, 1984 deadline. Ram had paid $41,085.93 on its account. Boever urged Lampert not to file its lien because that action would only further delay payment and assured Hoffman the account would be paid in one or two weeks. Boever represented to Lampert, as found by the trial court:

a.  Payments due to Ram on the Amhoist Tower project had been delayed and that's why Lampert had not yet been paid;

b.  Lampert would be paid in full when Ram received payment from the owners of the Amhoist Tower; and

c.  Ram had enough money coming on the Amhoist Tower project to pay off all of its subcontractors and materialmen on the project.

By February 20, 1984, Ram, unknown to Lampert, had received from the Amhoist Tower owners $61,350.96 more than it had paid out to subcontractors and materialmen. The owners still owed Ram $28,971.94, which they subsequently paid. Boever stated at that point he anticipated receipt of an additional $15,000 from the building owners for extra work performed by Ram. No formal request was made for that money, however, and that $15,000 was never received. Boever never guaranteed payment of a specific amount. Based on Boever's representations, Lampert decided not to file a mechanics' lien.

Subsequent to February 1984, Ram paid Lampert $14,926.52 on its account. Additional meetings were held between Ram and Lampert to determine the proper amount owed and the structure of payment. As a result of negotiations, the total amount owed as of May 1985 was agreed to be $32,753.99. Lampert offered Boever a written agreement regarding payment, including a personal guarantee from Boever, but Boever declined to sign.

Lampert sued Ram and Boever in October 1985 and served an amended summons and complaint in May 1986. Lampert sought compensatory damages in excess of

$45,000 plus interest for appellants' fraudulent misrepresentation and conversion.

By order filed November 25, 1986, the trial court awarded respondent $39,789.22, holding both appellants liable. Ram is presently inactive and Boever has at all times been the sole officer and shareholder of Ram. The ordered judgment included $23,174.36 for building materials plus finance charges based on 1.33% monthly interest on overdue charges which the court found to equal $16,614.86. Judgment was entered accordingly January 8, 1987. Appellants' motion for amended findings, or alternatively a new trial, was denied by order filed March 16, 1987. This appeal is made from both the judgment and the post-trial motion.

## ISSUES

1. Does the evidence support the elements of appellant Boever's fraudulent misrepresentation?

2. Did the trial court properly find the amount of finance charges owed respondent?

## ANALYSIS

1. Appellants request the judgment against Howard Boever be vacated in its entirety because the evidence presented by respondent does not satisfy the elements of fraudulent misrepresentation. Those elements are:

1. There must be a representation;

2. That representation must be false;

3. It must have to do with a past or present fact;

4. That fact must be material;

5. It must be susceptible of knowledge;

6. The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;

7. The representer must intend to have the other person induced to act, or justified in acting upon it;

8. That person must be so induced to act or so justified in acting;

9. That person's action must be in reliance upon the representation;

10. That person must suffer damage;

11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Davis v. Re–Trac Manufacturing Corp.,* 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967).

a. *Past or Present Facts.*

■ Appellants claim Boever's representations concerned future intentions or opinions that do not constitute a basis for misrepresentation. *See Cady v. Bush,* 283 Minn. 105, 109, 166 N.W.2d 358, 361 (1969) (representations of expectation regarding future acts or events are nothing more than conjecture); *Sievert v. LaMarca,* 367 N.W.2d 580, 589 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. July 17, 1985). They assert statements concerning future payment by the Amhoist Tower owners to Ram and appellants' subsequent future payments to Lampert are not actionable.

Appellants further state Boever had every intention of paying Lampert the amount he thought Ram owed the lumber company when he made his representations. They argue therefore appellants' failure to fulfill Boever's promise of future payment is not actionable. *See Guy T. Bisbee Co. v. Granite City Investing Corp.,* 159 Minn. 238, 243, 199 N.W. 14, 16 (1924) (promissory representation made with no intention of performance is actionable); *Wood v. Schlagel,* 375 N.W.2d 561, 564 (Minn.Ct.App.1985).

We conclude the trial court correctly found "Boever's representations had to do with past or present facts which were material to Lampert and were susceptible to knowledge." Boever did not merely promise to pay in the future, but instead represented he had not received sufficient monies from the Amhoist Tower owners to pay respondent. That statement concerns a past or present fact.

In addition, Boever's representation that Ram had enough money coming from the building owners to pay respondent is ac-

tionable because Boever knew that statement to be false and therefore his capacity to pay from future monies did not exist. *See Guy T. Bisbee Co.,* 159 Minn. at 243, 199 N.W. at 16 (statement regarding a party's capacity is a statement of fact and not merely a promise).

### b. *False Representation.*

■ Appellants claim Boever did not know his statements were false because he believed Ram had $43,971.74 due it from the Amhoist Tower owners and Ram owed Lampert only $20,033.71 as of February 20, 1984. Respondent states it was clear on that date Ram owed Lampert $43,271.37.

Respondent concentrates on Boever's statement Ram had not received sufficient monies from the building owners. Respondent argues, and we agree, that statement was clearly false because Ram had at that point received from the owners in excess of $61,000 more than Ram had paid to subcontractors and suppliers. Therefore, Ram had or should have had sufficient funds on February 20, 1984 to pay Lampert.

### c. *Reliance Justified.*

■ Appellants claim the trial court improperly found respondent was justified in relying on Boever's representation and not filing a mechanics' lien. They assert filing a lien is a simple procedure and respondent reasonably should have done so regardless of how much it trusted appellants.

But as respondent claims, its interests were threatened as a result of Boever's representations. Boever stated filing of a lien would only delay Ram's payment to Lampert. Further, Ram had been a good customer for several years and had paid in full on each previous contract. Respondent was therefore reasonable in not wanting to threaten that relationship at that point.

### d. *Proximate Cause.*

■ Appellants claim Boever's representations did not cause respondent injury. Recoverable damages are those which might foreseeably be expected to follow from the character of the misrepresenta-

tion itself. *Doty v. Brueckner,* 352 N.W.2d 827, 830 (Minn.Ct.App.1984).

Appellants assert respondent's damages were already suffered· prior to Boever's representations because respondent had already completed its supply of materials. They also allege respondent's claim is speculative because mere filing of a mechanics' lien would not have guaranteed Lampert would recover all monies owed to it by Ram.

We agree with respondent that by filing a lien, respondent would have protected its interest because it would have had first priority on floors 19 to 24 of the Amhoist Tower. Here the parties stipulated no other liens existed when respondent first supplied materials. *See* Minn.Stat. § 514.05 (1986) (lien relates back to supply of first item and takes priority if no other encumbrance or mortgage is then of record).

■ 2. Appellants claim the trial court improperly required them to pay $16,614.86 in finance charges. They assert the maximum permissible interest in this case is a simple 6% annual rate.

The trial court found:

Boever, on behalf of Ram, signed a credit agreement with Lampert when Ram opened its first account with Lampert in approximately 1977. That credit agreement provided that Lampert would extend credit to Ram and Ram agreed to pay a finance charge in the amount of 1.33% per month on any purchases not paid for within 30 days of billing. Ram set up over 100 charge accounts with Lampert through 1984. Each account was billed on a monthly basis while it was active. Each statement for each account, including the statements for the Amhoist account, stated that a finance charge of 1.33% per month would be added for all purchases not paid for within 30 days. Ram assented to the offer to provide credit upon those terms by taking advantage of Lampert's credit and by paying the finance charges, including initial finance charges with respect to the Amhoist account. Finance charges at the rate of 1.33% per month on all purchases not paid for within 30 days on the

Amhoist account amount to $16,614.86 through October 25, 1986.

Appellants complain the court's finding Boever signed a credit agreement is erroneous. Boever testified he did not sign an agreement. His deposition, however, indicates he could not say with certainty whether he did or did not. No written agreement was produced and no testimony specifically recalled Boever signing an agreement. It was Lampert's policy to require a credit agreement to be signed. Respondent alleges that agreement was destroyed as a result of its normal file cleansing. But it asserts testimony regarding its credit application procedure generally is admissible. *See* Minn.R.Evid. 1004(1).

We conclude even if a written agreement has not been established, appellants are bound to the 1.33% monthly rate because they acquiesced to the finance charge by paying it previously.

The general rule is that liability for interest is purely a matter of contract, requiring a promise to pay it. *Tate v. Ballard*, 243 Minn. 353, 68 N.W.2d 261 (1954). *See Anderson v. Property Developers, Inc.*, 555 F.2d 648 (8th Cir. 1977). However, an exception exists under the doctrine of accounts stated. An account stated is a manifestation of assent by a debtor and creditor to a stated sum as an accurate computation of an amount due the creditor. A party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent. Restatement (2d) *Contracts*, § 282(1) (1981). *See Meagher v. Kavli*, 251 Minn. 477, 88 N.W.2d 871 (1958). *American Druggists Insurance v. Thompson Lumber Co.*, 349 N.W.2d 569, 573 (Minn.Ct.App.1984). Appellants attempt to distinguish *American Druggists* by arguing they complained about the billing generally. They did not, however, complain regarding the interest rate.

■ Appellants also claim the trial court improperly compounded interest in violation of Minn.Stat. § 334.01, which provides in relevant part:

In the computation of interest upon any bond, note, or other instrument or agreement, interest shall not be compounded, but any contract to pay interest, not usurious, upon interest overdue, shall not be construed to be usury.

Minn.Stat. § 334.01 subd. 1 (1986). Absent an agreement, interest must be at a simple rate, rather than compounded. *See American Druggists*, 349 N.W.2d at 573 (compound interest award improper when monthly invoices did not indicate interest was to be compounded).

Respondent claims the interest awarded does not violate Minn.Stat. § 334.01 subd. 1 because that statute expressly allows a contract to pay interest "upon interest overdue." *Id.* Respondent argues its monthly billing statements provided written notice appellant may owe interest upon interest overdue. Each statement explained that the new balance contained the unpaid previous balance which included overdue interest. The trial court specifically found appellant "assented to the offer to provide credit upon those terms by taking advantage of [respondent's] credit and by paying the finance charges * * *." Further, appellants "set up over 100 charge accounts with [respondent] through 1984." These findings are supported by the evidence and show appellants acquiesced in paying interest upon overdue interest allowed by Minn.Stat. § 334.01, subd. 1.

## DECISION

The evidence supports the elements of appellant Boever's fraudulent misrepresentation. The trial court properly found the amount of finance charges owed respondent.

Affirmed.