## THE KENYON COMPANY v. LOUIS O. JOHNSON AND ANOTHER.[1]

October 24, 1919.

No. 21,364.

**Partnership — contract made by managing partner — liability of another partner.**

1. Where one partner, who has exclusive management of the partnership business, makes a contract on behalf of the partnership, the other partner cannot relieve himself from liability thereon by showing that he had no knowledge of the making of the contract, unless he also shows that it was outside the scope of the partnership business.

[1]Reported in 174 N. W. 436.

**Account stated.**

2. Where a debtor receives a statement of account, and not only retains it for some months without questioning its correctness, but also promises to pay it, he gives it the standing of an account stated which is assailable only for fraud or mistake.

**Same — directed verdict.**

3. An account stated having been established, and defendants having failed to present any competent evidence to prove their alleged offset, the court properly directed a verdict for plaintiff.

Action in the district court for Mahnomen county to recover $698 upon an account stated. The facts are stated in the opinion. The case was tried before Grindeland, J., who granted plaintiff's motion for a directed verdict. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*P. F. Schroeder,* for appellants.

*Johnston & Carman,* for respondent.

Taylor, C.

Action on an account stated. The court directed a verdict for plaintiff and defendants appealed from an order denying a new trial.

Defendants, as copartners under the firm name of Johnson Brothers, have a printing office and publish a newspaper called the Mahnomen Free Press at Mahnomen in Mahnomen county. Plaintiff is engaged in business at Des Moines, Iowa, and among other things makes and publishes county and other maps. Early in 1917, defendants wrote plaintiff concerning the making of a map of Mahnomen county. After some preliminary correspondence concerning the character of the map and the matter to be shown thereon, plaintiff made a proposition to make one thousand maps for defendants at specified prices, the data for the maps to be furnished by defendants, and the purchase price to be paid in three equal instalments 30, 60 and 90 days from date of shipment of the maps. By letter dated April 4, 1917, defendants accepted plaintiff's proposition. After a few minor changes mutually agreed upon, the maps were made and shipped. Thereafter and on October 15, 1917, plaintiff mailed defendants a statement of account, showing the sev-

144 M.—4.

eral items and that the entire purchase price for the one thousand maps was the sum of $747. On November 11, 1917, defendants remitted the sum of $49 and promised to make a further remittance in a week or ten days. Thereafter plaintiff sent two or three statements of account at intervals of about a month, and also wrote several letters insisting upon payment. On January 21, 1918, defendants wrote to the effect that they did not have the money to pay for the maps, but were making a strenuous effort to obtain it. In the spring of 1918, plaintiff placed the account in the hands of its attorneys for collection, who made three or four personal demands for payment and to whom defendants paid $50 on June 28, 1918. No other payments were made and thereafter plaintiff brought this suit upon an account stated.

Defendant Joseph contends that no cause of action has been established against him, for the reason that he had no knowledge of the transactions with plaintiff and took no part therein.

At the trial Joseph testified to the existence of the partnership, that the partnership business was managed and conducted wholly by Louis, and that he, Joseph, resided on his farm and had never given any personal attention to the partnership business nor taken any active part therein, but was what might be termed a silent partner. Although testifying that he had not personally directed or authorized the making of the contract, he made no attempt to show that the contract was outside the scope of the partnership business, nor that Louis lacked authority to make it on behalf of the partnership. The transactions between defendants and plaintiff were conducted wholly by correspondence. Plaintiff's proposition was made in letters to the firm, and the letter accepting it was signed in the firm name by Louis. It is true that Louis wrote several other letters to plaintiff, to which he signed only his individual name, but no letter found in the record contains any intimation that the contracting party was other than the partnership. It is also true that Louis claims that, at some indefinite date, he wrote a letter (not produced), in which he stated that Charles and Joseph Leith were interested with him in the map project. They prepared part of the data for the map, and this statement, if made, was made in connec-

tion with the furnishing of such data. The map bore the statement that it was published by the Mahnomen Free Press.

We think the court was correct in ruling that the contract was made with the partnership and was binding upon both partners.

As a defense defendants denied that any account had ever been stated or agreed to, and interposed a claim for damages for alleged inaccuracies in the map.

It is undisputed that they received the statements of account above mentioned, and not only retained them without objecting to the account, but promised to pay it. By this conduct they acquiesced in the correctness of the account and gave it the standing of an account stated. L. L. Elwood Mnfg. Co. v. Betcher, 72 Minn. 103, 75 N. W. 113; Western Newspaper Union v. Segerstrom Piano Mnfg. Co. 118 Minn. 230, 136 N. W. 752; Walker v. Steel, 9 Colo. 388, 12 Pac. 423; McCormack v. Sawyer, 104 Mo. 36, 15 S. W. 998; Noyes v. Young, 32 Mont. 226, 79 Pac. 1063; Oberdorfer v. Moyer, 30 Utah, 325, 84 Pac. 1102; Stickler v. Giles, 9 Wash. 147, 37 Pac. 293.

An account stated "can be assailed or set aside only on the ground of fraud or mistake." Behrens v. Kruse, 132 Minn. 69, 155 N. W. 1065, 156 N. W. 1, and cases there cited. No attempt was made to prove either fraud or mistake.

Even at the trial defendants did not challenge the correctness of the account further than to assert that damages for the alleged inaccuracies in the map should be offset against it. No claim of imperfection or inaccuracy was made, until defendants were informed that suit was about to be brought to enforce payment of the account. At the trial defendants offered no competent evidence tending to prove the existence of the alleged inaccuracies. All the data for the map was furnished by defendants themselves in writing. The court informed them that they would be permitted to show discrepancies between the map and the data so furnished. They did not produce this data, claiming that it was in the possession of plaintiff. They had served no notice on plaintiff to produce it, and it was not in court nor in the possession of plaintiff's attorneys. So far as appears defendants had made no effort whatever to procure it. They attempted to prove the discrepancies by the testi-

mony of defendant Louis, to the effect that the data had been taken from the official records of Mahnomen county, and that the map differed from those records in certain unspecified particulars. This testimony was excluded on the ground that no foundation had been laid for it. The ruling was correct. The question was whether the map differed from the data contained in the writings furnished by defendants.

. Parol evidence of the contents of written documents in the possession of the adverse party is not admissible, unless notice to produce the original has been given to him in time to afford him a reasonable opportunity to produce it and he fails to do so. Dade v. Aetna Ins. Co. 54 Minn. 336, 56 N. W. 48; 5 Chamberlayne, Evidence, § 3585, and cases there cited. Defendants having offered no competent evidence in support of their claim and the account stated having been established, the court properly directed a verdict for plaintiff.

Order affirmed.