*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1499**

Mohrman & Kaardal, P.A.,
Respondent,

vs.

Gene Rechtzigel, et al.,
Appellants.

**Filed August 10, 2015
Affirmed in part and reversed in part
Reyes, Judge**

Dakota County District Court
File No. 19HACV134181

William F. Mohrman, James R. Magnuson, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota; and

Paul C. Peterson, Eric J. Steinhoff, William L. Davidson, Lind, Jensen, Sullivan & Peterson, Minneapolis, Minnesota (for respondent)

Mark A. Olson, Olson Law Office, Burnsville, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and Minge, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REYES**, Judge

Appellants challenge the district court's grant of respondent's summary judgment motion on appellants' account-stated and breach-of-contract claims and dismissal of appellants' legal malpractice counterclaims, arguing that (1) respondent's motion for summary judgment was untimely; (2) summary judgment is not appropriate because genuine issues of material fact exist; (3) appellants established a prima facie case of malpractice; (4) appellants' request to amend the scheduling order should have been granted; (5) the district court abused its discretion by assigning liability to entities or individuals without a legal basis; (6) the district abused its discretion by awarding respondent attorney liens; and (7) the district court abused its discretion by awarding to respondent the cost of collections. We affirm in part and reverse in part.

## FACTS

Appellant Gene Rechtzigel is the property owner and manager of appellant Rex Rentals, F.R.R. (Rex Rentals) and the personal representative of the estate of Frank H. Rechtzigel (the Frank Estate). Appellant Rechtzigel is also the named trustee of the Evelyn I. Rechtzigel Trust (the Evelyn Trust), the Frank H. Rechtzigel Charitable Trust Remainder Unitrust (the Charitable Trust), and of all trusts under the Frank Estate. All of the trusts listed above (collectively, the Trust Estate), are the remaining appellants in this action. From 2000 until 2013, respondent law firm Mohrman & Kaardal, P.A. provided legal services to appellants in a range of matters. Erick Kaardal, one of respondent's

attorneys, was the primary attorney representing appellants. The instant action was brought in district court against appellants to collect unpaid legal fees.

## I.      Retainer and fee agreement

On or around May 7, 2002, appellant Rechtzigel and his father Frank Rechtzigel retained respondent to represent the Evelyn Trust in an action against Fidelity National Title and Pulte Title Insurance Agency LLC. Respondent provided an agreement entitled Retainer and Fee Agreement to appellant Rechtzigel and Frank Rechtzigel. Per the agreement, the services would be provided at a rate of $195 per hour and legal charges were required to be paid within 30 days of receipt of the invoice. Additionally, the agreement provided that the Evelyn Trust was responsible for payment of costs and disbursements, and "in the event [respondent] must take legal action to collect from the [Evelyn Trust] account, [the Evelyn Trust] expressly agree[s] to pay all collection costs, including reasonable attorney's fees." A paragraph entitled, "Trustees, Heirs and Successors" states: "[The Evelyn Trust] expressly binds all Co-Trustees, Successor Trustees and other Trustees of the [Evelyn Trust] [a]greement to this [a]greement. Further, [the Evelyn Trust] hereby binds [the Evelyn Trust's] heirs, personal representatives, and legal representatives to the terms and conditions set forth herein." In order to be enforceable, the agreement required signatures by all parties on or before May 7, 2002. It is undisputed that the agreement was never signed.

## II.     Legal representation

### A.     Paid legal fees

Despite the unsigned agreement, over the next decade respondent provided legal services to appellants in: (1) a condemnation action in 2000 on behalf of appellant Rechtzigel and Frank Rechtzigel; (2) an estate dispute in 2003 on behalf of appellant Rechtzigel individually; (3) a criminal trespass matter in 2007 on behalf of appellant Rechtzigel individually; and (4) an insurance-policy dispute in 2010 on behalf of the Evelyn Trust. Appellant Rechtzigel paid for those legal services, consistent with the terms of the agreement. Those payments exceeded $289,000 and were made either through appellant Rechtzigel's personal accounts or various bank accounts of the Trust Estate.

### B.     Unpaid legal fees

Respondent alleges that there remains an outstanding balance on appellants' account. In 2010, respondent represented the Evelyn Trust in a dispute with Regatta Clubhouse Association, Inc. regarding payment of association dues. Respondent alleges that it incurred $8,735.22 in attorney fees, costs, and expenses that have not been paid. In 2011, respondent represented the Trust Estate in a matter to obtain title to certain land against Fischer Market Place, LLC. Respondent alleges that the amount of attorney fees incurred in that matter, including costs and expenses, totaled $132,094.85. In 2012, respondent represented appellant Rechtzigel and appellant Rex Rentals in a bankruptcy matter and asserts that $9,049.72 in attorney fees, costs, and expenses have not yet been paid. Later that year, respondent also represented appellant Rechtzigel in a harassment-

4

restraining-order matter, billing $20,847.76 in attorney fees, costs, and expenses that remain unpaid. Finally, in 2013 respondent represented appellant Rechtzigel as trustee of the Evelyn Trust in a dispute involving the City of Apple Valley and the Apple Valley Police Department in Dakota County. The amount of unpaid legal fees, costs, and expenses incurred by respondent in that matter totaled $14,163.44.

### III. Unpaid balances and termination of representation

Due to large outstanding balances, respondent requested appellant Rechtzigel make payments in 2012. Appellant Rechtzigel assured respondent that he would bring the balance current the following year. The balance remained unpaid in 2013. In August 2013, respondent informed appellant Rechtzigel that it would not provide any additional legal services until appellant Rechtzigel agreed to make payments. Appellant Rechtzigel stated he would not agree to a payment plan and instead terminated respondent's representation in a letter dated August 13, 2013.

### IV. Procedural background

On October 7, 2013, respondent brought an action in district court alleging claims of breach of contract (count I), unjust enrichment (count II), account stated (count III), and attorney lien for compensation (count IV). Respondent also requested judgment against appellants, jointly and severally, for the payment of "reasonable attorney fees, costs, and expenses to be determined related to the commencement of the instant action to collect the attorney fees, costs, and expenses entitled to [respondent]." An affidavit of service indicated that a copy of the complaint was served to appellants the following day.

5

Appellants, pro se, filed an answer denying the allegations in respondent's complaint. Specifically, appellants denied that there was a fee agreement between the parties and asserted that respondent had "waiv[ed] all of [its] alleged charges in exchange for a gift to [attorney Erick Kaardal's] Church." Appellant Rechtzigel claimed that he had never seen the agreement before. Appellants asserted a counterclaim seeking $300,000 in damages for "loss of property, injury, harm, loss of work, loss of money, loss of enjoyment due to [respondent's] behavior of malpractice, gross negligence, incompetence, misrepresentation, failing to protect, failing to represent, failing to provide representation, failing to be [g]ood faith, and confidentiality, and failing to expose fraud." It is undisputed that appellants did not serve an affidavit of expert review with their counterclaim as required under Minn. Stat. § 544.42, subd. 2(1) (2014), or seek a waiver to the affidavit requirement as set out in Minn. Stat. § 544.42, subd. 3(c) (2014).

## V.     Removal to federal court and scheduling order

On November 6, 2013, appellant filed a motion to remove the case to federal court alleging that there was a "strong appearance of [b]ias against [appellants] in Dakota County." The motion was denied for lack of jurisdiction, and the case was remanded back to Dakota County by order on January 14, 2014. On January 27, respondent sent a letter to appellants suggesting that the parties meet for a scheduling conference, with a letter of demand for appellants' affidavit of expert review. Appellants did not respond.[1]

---

[1] Appellant retained counsel and a certificate of representation was filed with the district court on February 28, 2014. Appellants' counsel informed the district court that he had been retained the previous day and that the parties had communicated about setting up a

6

The district court issued a scheduling order on March 24, 2014, and set May 1, 2014, as the deadline for hearings on dispositive motions.

## VI. Affidavit of expert review

On March 28, 2014, appellants filed a pro se motion with the district court contending that Minn. Stat. § 544.42 (2014) did not apply. Alternatively, appellants requested that the district court waive the requirement of an affidavit of expert review for good cause. Appellant Rechtzigel alleged that he was unable to timely file an affidavit of expert review because his attorney abruptly withdrew representation. Despite making efforts to contact approximately 34 attorneys in two days, appellant Rechtzigel asserts he was unable to secure an affidavit.

## VII. Summary judgment

Respondent filed a motion for summary judgment on April 3, 2014—28 days before the May 1 deadline—and completed service to appellants by U.S. mail. On April 21, appellants retained legal counsel and filed an ex parte motion with the district court requesting "postponement of [respondent's] summary judgment motion and modification of [the] scheduling order." Appellants argued that a postponement and modification of the scheduling order was necessary because (1) respondents motion for summary judgment was untimely; (2) the case was "not ripe for trial;" and (3) there was a case pending at the Minnesota Court of Appeals which appellants alleged could impact appellants' malpractice claim against respondent.

---

scheduling conference. On March 20, 2014, appellants' counsel filed a notice that he was withdrawing as counsel on behalf of appellants.

The district court issued an order granting respondent's motion for summary judgment as to the account-stated and breach-of-contract claims.[2] The district court also granted respondent's motion to dismiss appellants' counterclaim and denied all of appellants' motions. Respondent's request for an attorney lien was granted and judgment was entered against appellants Rechtzigel individually, Rechtzigel as trustee for the Evelyn Trust and the Charitable Trust, and Rex Rentals, jointly and severally. On July 7, 2014, the district court issued an order and amended judgment, awarding respondent $57,417 in attorney fees and $5,012.50 in costs.[3] This appeal followed.

## D E C I S I O N

### I. Timeliness of respondent's motion for summary judgment

Appellant argues that the district court erred in considering respondent's motion for summary judgment because the motion was untimely served. While we agree that respondent's motion was untimely, we conclude that the district court did not abuse its discretion in considering the motion.

Interpretation of the Minnesota Rules of Civil Procedure presents a question of law which we review de novo. *Madson v. Minn. Mining & Mfg. Co.,* 612 N.W.2d 168, 170 (Minn. 2000). Minn. R. Civ. P. 56.03 provides that summary-judgment motions are governed by Minn. R. Gen. Pract. 115.03. Rule 115.03(a) sets the notice requirement for

---

[2] The district court's decision did not address the claim alleging unjust enrichment (count II).

[3] The district court noted that it "[did] not include[] 'Gene Rechtzigel as Personal Representative for the [Estate of Frank] and as Trustee of any Trust thereunder' in [the] judgment because no judgment against that [d]efendant was requested or entered at the time of summary judgment."

8

dispositive motions and requires a moving party to serve proper notice and the specified documents on an opposing party and the court administrator at least 28 days prior to the scheduled hearing or else the motion will not be heard. Minn. R. Gen. Pract. 115.03(a). "Service by mail is complete upon mailing." Minn. R. Civ. P. 5.02(c). However, when a rule requires

> documents to be filed with the court administrator within a prescribed period of time before a specific event, filing may be accomplished by mail, subject to the following: (1) [three] days shall be added to the prescribed period; and (2) filing shall not be considered timely unless the documents are deposited in the mail within the prescribed period.

Minn. R. Gen. Pract. 115.01(b).

The district court did not err in considering respondent's motion for summary judgment. While appellants were served by U.S. mail with the summary judgment motion 28 days prior to the scheduled motion hearing, the prescribed period was 31 days. *See id.* But a district court can in its discretion modify the time limits. *Brault v. Acceptance Indem. Ins. Co.*, 538 N.W.2d 144, 149 (Minn. App. 1995), *review denied* (Minn. Nov. 21, 1995). However, "in no event shall the motion [for summary judgment] be served less than ten days before the time fixed for the hearing." Minn. R. Civ. P. 56.03. Although respondent's motion was not served before the prescribed period, it was served well before the mandatory ten-day requirement. Moreover, it appears that the district court relaxed the timeliness rules and allowed appellants' responsive motion even though it was also untimely. *See* Minn. R. Gen. Pract. 115.03(b) (requiring that responsive documents be served on opposing counsel and filed with the court

9

administrator at least nine days prior to the hearing).  Appellants did not face any prejudice as a result.  Accordingly, we conclude that the district court did not err in considering the motion.  *See Brault*, 538 N.W.2d at 149 ("Where a court in its discretion relaxes the timeliness rules, there is no jurisdictional defect if there is no prejudice to the parties.").

## II.    Motion for summary judgment

Appellants argue that the district court erred in granting summary judgment to respondent because there are genuine issues of material fact.  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law."  Minn. R. Civ. P. 56.03.

> [T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions.

*DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997).  "[T]he party resisting summary judgment must do more than rest on mere averments."  *Id.*  On appeal from summary judgment, this court reviews the evidence de novo but in a light most favorable to the nonmoving party.  *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 364 (Minn. 2009).

10

## A. Account-stated claim

With respect to the account-stated claim, appellants argue that summary judgment is improper because an issue of material fact exists on whether appellants disputed the amounts allegedly owed to respondent.

The account-stated doctrine is an alternative means of establishing liability for a debt other than recovery pursuant to a contract claim. *Am. Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d 569, 573 (Minn. App. 1984). An account stated is a manifestation of assent by a debtor and creditor to a stated amount as an accurate calculation of an amount due to the creditor. *Cherne Contracting Corp. v. Wausau Ins. Cos.*, 572 N.W.2d 339, 345 (Minn. App. 1997), *review denied* (Minn. Feb. 19, 1998). An account stated constitutes prima facie evidence of the debtor's liability. *Erickson v. Gen. United Life Ins. Co.*, 256 N.W.2d 255, 259 (Minn. 1977). "A party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent." *Lampert Lumber Co. v. Ram Constr.*, 413 N.W.2d 878, 883 (Minn. App. 1987) (quotation omitted).

Appellant Rechtzigel asserts that he disputed "*any* fees charged" when he stopped making payments to respondent. However, nonpayment does not constitute objection if the refusal to pay "is based solely on the ground of inability to pay." 1A C.J.S. *Account Stated* § 19 (2005); *see Kenyon Co. v. Johnson*, 144 Minn. 48, 50-51, 174 N.W. 436, 437 (1919) (concluding that defendants did not object to invoices by telling plaintiff that "they did not have the money to pay for the [goods]"). Here, respondent offered unrebutted testimony that on at least two occasions, appellant Rechtzigel explained that

11

he did not make payments on the balance because he was in a "cash crunch" and was waiting for resolution of an IRS matter.

Appellant Rechtizgel points to his "laundry list of complaints" as evidence of his dissatisfaction with respondent's service. But general complaints about billing do not constitute an objection; instead, a debtor must specifically object to the correctness of the account. *See Kenyon Co.*, 144 Minn. at 51, 174 N.W. at 437 (concluding that defendants failed to object because they did not timely "challenge the correctness of the account"); *see also Lampert Lumber Co.*, 413 N.W.2d at 883 (concluding that appellants failed to object to the interest rate on a debt by making "complain[ts] about the billing generally"). Appellants do not assert facts demonstrating that they objected to any specific amount, hourly rate, or invoice. Thus, even assuming appellants made general complaints about billing, those complaints do not constitute an objection.

Appellant Rechtzigel contends that he "often and repeatedly disputed the fees that were being run up on [him]." However, again, this is insufficient to survive summary judgment as appellants have not put forth any specific facts to indicate when or with which invoice he took issue. *See Erickson*, 256 N.W.2d at 258 (concluding that plaintiff's averment that he "continuously objected to the statements and accountings of defendant" was "general in nature" and "insufficient to oppose a motion for summary judgment").

Finally, appellant Rechtzigel argues that the district court improperly dismissed his assertion that he was pressured into donating $50,000 to Kaardal's church in exchange for the promise that $50,000 would be deducted from amounts appellants owed.

This argument is unpersuasive. Again, general averments are insufficient as a matter of law to overcome summary judgment. *DLH*, 566 N.W.2d at 71. The record shows that respondent continued to provide legal services to appellants without giving appellants the $50,000 credit and appellants continued to make payments on those invoices.

Respondent submitted affidavits and exhibits that include itemized billing statements setting forth the date, number of hours, name of attorney, hourly rate,[4] and description of the work performed. Each of the invoices that were billed was sent to appellants on or around the date of that specific invoice. Appellants have not demonstrated that there exists a genuine issue of material fact. Because there is undisputed evidence that (1) respondent sent invoices to appellants; (2) appellants made partial payments on some of them; and (3) appellants never made any specific objections to any of particular invoices, we conclude that the district court did not err in granting summary judgment in favor of respondent on its account-stated claim.

**B.      Breach-of-contract claim**

Appellants argue that the district court erred by granting summary judgment on respondent's breach-of-contract claim. Specifically, appellants assert that there is a genuine issue of material fact as to the existence of a fee agreement.

"[A] party has an unrestricted right to contract with his attorney as to compensation for services and the measure and mode thereof, and . . . the contract may be either express or implied." *Holt v. Swenson*, 252 Minn. 510, 514, 90 N.W.2d 724, 727

---

[4] According to the invoices dating from as early as 2010, the rate fees for Kaardal's services increased to an hourly rate of $300.

13

(1958). "The essentials of such contracts . . . are the same as any other contracts." *Kittler & Hedelson v. Sheehan Props., Inc.*, 295 Minn. 232, 235, 203 N.W.2d 835, 838 (1973). "The elements of a breach of contract claim are (1) formation of a contract; (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant; and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quotation omitted).

The district court acknowledged that the parties did not execute the agreement, but concluded that a contract was formed based on the parties' course of performance. We agree.

"A signed agreement is not required for formation of a contract." *Powell v. MVE Holdings, Inc.*, 626 N.W.2d 451, 462 (Minn. App. 2001), *review denied* (Minn. July 24, 2001). Indeed, "[a] party may manifest acceptance of an agreement by written or spoken words, or by conduct and actions." *Gorham v. Benson Optical*, 539 N.W.2d 798, 800 (Minn. App. 1995). Moreover, "where the relation between the parties is such that the offeror is justified in expecting a reply, or where the offeree is under a duty to reply, the latter's silence will be regarded as an acceptance." *Holt*, 252 Minn. at 516, 90 N.W.2d at 728.

It is undisputed that respondent offered its legal services to appellants. And the evidence, taken in the light most favorable to appellants, sustains the district court's finding that appellants accepted respondent's offer through their conduct. Here, appellants allowed respondent to represent them in numerous litigations spanning more

14

than a decade.  Indeed, there is undisputed evidence that appellants made partial

payments to respondent for legal services and encouraged respondent to continue

representing them in other matters.  Appellants even provided a letter terminating

respondent's services.  This course of performance established both acceptance of an

agreement for legal services and consideration by the parties.  *See id.* at 515-16, 90

N.W.2d 728-29 (finding acceptance by conduct when one party allowed other party to

perform contract without objection).  For these reasons, we conclude that the district

court did not err in granting summary judgment on respondent's breach-of-contract claim

based on the parties' course of performance.[5]

## III.    Appellants' counterclaim of legal malpractice

Appellants argue that the district court erred in its determination that an affidavit

of expert review was required to establish a prima facie case of malpractice.  The district

court determined that appellants' malpractice counterclaim was "incredibly vague" and

thus an affidavit of expert review was required.

> To bring a successful claim of legal malpractice, a plaintiff
> traditionally must show four elements: (1) the existence of an
> attorney-client relationship; (2) acts constituting negligence
> or breach of contract; (3) that such acts were the proximate
> cause of the plaintiff's damages; and (4) that but for
> defendant's conduct, the plaintiff would have been successful
> in the prosecution or defense of the action.

*Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren*, *Ltd.*, 711 N.W.2d 811, 816

(Minn. 2006) (quotation omitted).  Conclusory statements are insufficient to establish a

---

[5] We note that, on appeal, appellants only challenge the district court's determination as to the existence of a contract, the first element in a breach-of-contract claim.  Therefore, we decline to address the remaining elements.

15

prima facie case. *Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Wiant, Von Korff & Hobbs, Ltd.*, 783 N.W.2d 733, 746 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010). Generally, expert testimony is required to establish the standard of conduct, its breach, and proximate causation. *See Jerry's Enters., Inc.*, 711 N.W.2d at 817.

Here, appellants failed to allege anything in either the answer or affidavits to establish a standard of conduct or a breach of that conduct. Appellants have only asserted generalized and conclusory statements. For these reasons, the district court did not err in determining that an affidavit of expert review was required to establish a prima facie case of malpractice. *See id.*

Alternatively, appellants argue that the district court abused its discretion by dismissing appellants' malpractice claim for noncompliance with statutory requirements. Minn. Stat. § 544.42, subd. 2 requires that in cases "where expert testimony is to be used . . . to establish a prima facie case," a plaintiff must serve two expert-witness disclosure affidavits on an adverse party. The first, an affidavit of expert review, must establish that an expert reviewed the case and reached the opinion that the defendant deviated from the applicable standard of care and caused the plaintiff's injury. Minn. Stat. § 544.42, subds. 2(1), 3(a)(1). The affidavit of expert review must generally be served with the pleadings. *Id.*, subd. 2(1). The second, an expert-identification affidavit, must identify the expert witnesses and provide the substance of the experts' opinions and the basis for those opinions. *Id.*, subds. 2(2), 4(a). Failure to supply the required affidavits "results, upon motion, in mandatory dismissal." *Id.*, subd. 6(a), (c).

16

However, the statute provides that the party bringing the action may apply for a waiver or modification of the affidavit-of-expert-review requirement at the time the action is commenced. *Id*., subd. 3(c). The district court then determines whether "good cause exists for not requiring the certification." *Id.* If the request for a waiver is denied, the plaintiff must serve on the defendant the affidavit of expert review within 60 days. *Id.* It is undisputed that appellants did not serve an affidavit of expert review with their initial pleading. It is also undisputed that appellants did not serve an application at the commencement of the action, requesting a waiver or modification to the affidavit requirements. Likewise, there is uncontroverted evidence that appellants did not serve an affidavit within 60 days of respondent's formal demand. For these reasons, appellants' counterclaim for malpractice is subject to mandatory dismissal.

Nevertheless, the time limits may be extended upon a showing of excusable neglect. *Lake Superior Ctr. Auth. v. Hammel, Green & Abrahamson, Inc.*, 715 N.W.2d 458, 471 (Minn. App. 2006), *review denied* (Minn. Aug. 23, 2006). "Excusable neglect is found when (1) there is a reasonable defense on the merits; (2) there is a reasonable excuse for the failure to answer; (3) the party acted with due diligence . . . ; and (4) no substantial prejudice results to other parties." *Id.*

As indicated above, appellants did not have a reasonable claim of malpractice on the merits. Appellants did not allege anything specific, nor did appellants identify the breached standard of conduct. Moreover, despite receiving a letter formally demanding an affidavit, appellants did not obtain one. Instead, appellants waited until two days before the 60-day deadline to attempt to fulfill the requirements. Appellants failed to

17

show a reasonable excuse for their failure to act or show that they acted with due diligence. The district court did not abuse its discretion in dismissing appellants' counterclaim of malpractice.

**IV.    Appellants' request to modify the scheduling order**

Appellants argue that the district court's refusal to modify the scheduling order violates appellants' right to due process. Specifically, appellants argue that "[n]o time was afforded to conduct discovery." We are not persuaded. A "district court has broad discretion to amend scheduling-order deadlines, and we review its decision for an abuse of discretion." *Mercer v. Andersen*, 715 N.W.2d 114, 123 (Minn. App. 2006).

The action was commenced in district court in October 2013. Despite respondent's efforts by letter in late January 2014 to meet for a scheduling conference, appellants elected not to respond. Additionally, from the time the district court issued its scheduling order in March 2014 until appellants filed a motion requesting modification of the deadlines, appellants did not make any attempt to conduct any form of discovery. Appellants have not made a showing of good cause to support their motion. *See* Minn. R. Civ. P. 16.02 ("A schedule shall not be modified except by leave of court upon a showing of good cause."). The district court did not abuse its discretion in denying appellants' request.

Appellants also argue that the district court erred by failing to stay the action pending the resolution of three cases in which respondent represented appellants that were pending appeal. Appellants cite to Minn. R. Civ. App. P. 108.01, which provides that "the filing of a timely and proper appeal suspends the [district] court's authority to

18

make any order that affects the order or judgment appealed from, although the trial court retains jurisdiction as to matters independent of, supplemental to, or collateral to the order or judgment appealed from." *See* Minn. R. Civ. App. P. 108.01, subd. 2. Appellants misinterpret the rule. The cases that are pending on appeal are unrelated to the instant case. In fact, respondent is not a party in those cases. Appellants' reliance on rule 108.01 is mistaken and the district court did not err in denying appellants' request to stay the action.

## V. Joint and several liability

On appeal, appellants argue that the district court abused its discretion by improperly "assigning liability jointly and severally to entities or individuals without any legal basis." But appellants did not raise this argument to the district court, and we do not consider arguments presented for the first time on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

## VI. Attorney liens

Appellants also challenge the district court's award of attorney liens. Because the issue is raised for the first time on appeal, this argument is waived. *See id.*

## VII. Attorney fees

Finally, appellants contend that the district court erred by awarding respondent cost of collections. We agree. On review, this court will not reverse an award of attorney fees absent an abuse of discretion. *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn. 1987).

19

In Minnesota, the recovery of attorney fees is governed by the American rule, which "is that attorney fees are not recoverable in litigation unless there is a specific contract permitting or a statute authorizing such recovery." *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 554 (Minn. 2008) (quotation omitted); *see Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998) (referring to this rule as "[t]he American rule"). Appellate courts are "exceedingly cautious when awarding attorney fees as damages." *Osborne v. Chapman*, 574 N.W.2d 64, 68 (Minn. 1998) (quotation omitted). Therefore, absent an express contract or statute authorizing attorney fees, respondent is not authorized to recover attorney fees.[6]

Based on the record before us, we conclude that respondent is not entitled to recover its attorney fees. Respondent argues that the terms of the parties' contract, based on their course of performance, allows it to recover the cost of collections. However, respondent has not pointed to any caselaw or legal authority to support its argument. Indeed, we have not been able to find any authority that allows for a party to recover attorney fees absent a specific, written contract for legal services. Because the parties' contract was based on their course of performance, the terms of that agreement are limited to those that can be ascertained by the parties' conduct. Here, appellants accepted respondent's offer for legal services by requesting such services on an ongoing basis. Respondent performed the legal services and appellants accepted the services and partially paid for them. But there is no indication from their conduct that the parties

---

[6] We note that Minn. R. Civ. P. 11 permits an award of reasonable attorney fees and expenses as an appropriate sanction. However, that is not at issue here as respondent did not seek an award of attorney fees pursuant to a rule 11 motion for sanctions.

20

agreed to a provision that allows recovery for cost of collections. For these reasons, we

hold that the district court abused its discretion by awarding respondent its cost of

collections.[7] Accordingly, we reverse on this issue.

**Affirmed in part and reversed in part.**

---

[7] Appellants also assert three additional arguments with respect to the award of attorney fees. Because we conclude that respondent is not entitled to attorney fees, we need not address those issues.